## CLEWIS v. TEXAS.

No. 648. Argued March 15, 1967.—Decided April 24, 1967.

*Reagan H. Legg,* by appointment of the Court, 385 U. S. 944, argued the cause and filed briefs for petitioner.

*Gilbert J. Pena,* Assistant Attorney General of Texas, argued the cause for respondent. With him on the brief were *Crawford C. Martin,* Attorney General, *George M. Cowden,* First Assistant Attorney General, *R. L. Lattimore,* Assistant Attorney General, and *A. J. Carubbi, Jr.*

MR. JUSTICE FORTAS delivered the opinion of the Court.

Petitioner, Marvin Peterson Clewis, stands convicted of the murder, by strangulation, of his wife, Dorothy Mae Clewis. The jury which found him guilty imposed a sentence of 25 years' imprisonment. During the course of his trial, petitioner moved to exclude from evidence three statements he had made while in police custody. Petitioner claimed that these statements had not been voluntarily made, and that their use against him at his trial would deny him due process of law, as guaranteed by the Fourteenth Amendment to the Constitution.[1] Evidence was taken by the court outside of the jury's

---

[1] Petitioner also claimed that his right to counsel had been violated in the securing of these confessions. Cf. *Massiah* v. *United States,* 377 U. S. 201 (1964).

presence, and the motion was overruled.[2]  Petitioner's third, and last, written confession was then introduced in evidence over objection.  The question of its voluntariness was presented to the jury, which, by its general verdict, resolved the question against petitioner.  Petitioner's constitutional objection to the use of his statement was renewed in his motions for instructed verdict and for a new trial, both of which the trial judge overruled.  On appeal, the Court of Criminal Appeals of Texas affirmed the judgment of conviction.  That court reviewed the record and concluded that it could not hold "that there are any undisputed facts which rendered the confession inadmissible as a matter of law."  We disagree, and we reverse.

The question for determination is whether, considering the "totality of the circumstances,"[3] Marvin Clewis' statements were not voluntary and the third statement should have been excluded.  We approach this question from an independent examination of the whole record, our established practice in these cases.[4]  Our recent observation in *Davis* v. *North Carolina,* 384 U. S. 737, 741 (1966), applies equally here: "As is almost invariably so in cases involving confessions obtained through unobserved police interrogation, there is a conflict in the testimony as to the events surrounding the interrogations."  For the purpose of deciding this case, we need not go beyond the State's version of the facts.  Accord-

---

[2] The trial judge did not make written findings on the voluntariness issue at the time of trial.  Some eight months later he certified that he had concluded that the (third) statement was in fact voluntary.  This "belated entry and filing of the trial court's findings" was accepted as a supplement to the transcript of record by the Court of Criminal Appeals.

[3] *Fikes* v. *Alabama,* 352 U. S. 191, 197 (1957).  See also, *e. g., Davis* v. *North Carolina,* 384 U. S. 737 (1966); *Haynes* v. *Washington,* 373 U. S. 503 (1963).

[4] See *Davis* v. *North Carolina,* 384 U. S. 737, 741–742 (1966).

ingly, we do not consider petitioner's claim that he was subjected to physical assaults.

The trial of this case was prior to the date of decision of *Miranda* v. *Arizona,* 384 U. S. 436 (1966), the requirements of which, therefore, are not directly applicable, *Johnson* v. *New Jersey,* 384 U. S. 719 (1966), although relevant on the issue of voluntariness, *Davis* v. *North Carolina,* 384 U. S. 737 (1966).

Petitioner was taken into custody at about 6 a. m. on Sunday, July 8, 1962, and first gave a statement to the police late in the afternoon of Monday, July 9. Thereafter, he was taken before a magistrate. On the view most favorable to the State, petitioner had been held some 38 hours before being taken before a magistrate to be charged, had had little sleep and very little food, and appeared to the police to be sick. He had been visited briefly once or twice, but had had no contact with a lawyer. He had consistently denied all knowledge of his wife's death until the point at which he agreed to give a statement, and then had confessed to killing her in a way (by shooting) that—it later developed—was inconsistent with the facts.[5]

Petitioner next gave a statement on Thursday, July 12. The events leading up to the second "confession" may be summarized: having been formally charged, but unrepresented and unadvised by counsel, petitioner was interrogated fairly frequently and by several different officers from Monday evening to Thursday afternoon.[6] During this period he was driven on a round trip of about 600 miles, was administered several polygraph tests, was

---

[5] Most of the physical abuse petitioner later related allegedly occurred during this period.

[6] The State contends that Clewis did consult with an attorney on Thursday morning. He insists the conference took place on Friday morning. In any event, the State does not dispute his testimony that the only subject discussed with the lawyer was the matter of a fee, and that the lawyer declined to represent him.

detained in at least three different police buildings, and apparently had very little to eat and little contact except with policemen; Despite all this, and in the face of his earlier "confession," he steadfastly denied any guilt—or even knowledge—with respect to his wife's death until he finally produced the second "confession."

On Friday, July 13, Clewis was delivered to the custody of the Midland County Sheriff. He remained in the county jail from then until Tuesday, July 17. During this time he was apparently not interrogated, abused, or denied adequate food and sleep. He did not, however, consult with a lawyer.

At about 9:30 a. m., Tuesday, July 17, petitioner was again interrogated, this time by two deputy sheriffs. He again began by denying any guilt in connection with his wife's death. No lawyer was present, nor had petitioner been advised of his right to have one appointed. The Midland County District Attorney arrived, and shortly thereafter petitioner confessed for the third time. There is no testimony that any warning of the right to remain silent was given prior to this oral confession. About 10:45 a. m. preparation of a written statement was begun, following a formal warning of the right not to make it. Shortly thereafter, Clewis signed the statement which was introduced against him at trial.

On this record, we cannot hold that petitioner's third statement was voluntary. It plainly cannot, on these facts, be separated from the circumstances surrounding the two earlier "confessions." There is here no break in the stream of events from the time Sunday morning when petitioner was taken to the police station to the time Tuesday morning some nine days later that he signed the statement in issue, sufficient to insulate the statement from the effect of all that went before. Compare *United States* v. *Bayer,* 331 U. S. 532, 540 (1947) with *Reck* v. *Pate,* 367 U. S. 433, 444 (1961).

Among the factors which require our conclusion that the "confession" was not voluntary are the following:

(1) During this long period of custody, petitioner was never fully advised that he could consult counsel and have counsel appointed if necessary, that he was entitled to remain silent, and that anything he said could be used as evidence against him. Cf. *Davis* v. *North Carolina*, 384 U. S. 737 (1966); *Miranda* v. *Arizona*, 384 U. S. 436 (1966). Even after he was arraigned, he was not advised of his right to appointed counsel. Post-arraignment interrogation, over a period of more than a week, occurred without the presence of counsel for the accused, and without any waiver thereof.

(2) The first statement was secured following an initial taking-into-custody which was concededly not supported by probable cause,[7] followed by 38 hours of intermittent interrogation—despite the Texas rule that an accused be taken before a magistrate "immediately." Texas Code Crim. Proc. Art. 217 (1925); now, substantially revised in other respects, Texas Code Crim. Proc. Arts. 14.06, 15.17 (1965). This was followed by prolonged, if intermittent, interrogation by numerous officers, in several buildings, punctuated by a trip to the gravesite and a long trip to another town, and accompanied by several polygraph tests. The police testimony makes it clear that the interrogation was not intended merely to secure information, but was specifically designed to elicit a signed

---

[7] The arresting officer testified that he merely asked petitioner to accompany him to the police station. He was of the opinion that he had no probable cause to arrest petitioner. Plainly, however, petitioner must be considered to have been taken into custody either at the time the officer came to get him, or shortly thereafter when the police, by their conduct, effectively asserted a right to detain him indefinitely at the jail. The Court of Criminal Appeals was apparently of the view that the rule of *Wong Sun* v. *United States*, 371 U. S. 471 (1963), is inapplicable to state trials—an issue upon which we express no opinion herein, since we find petitioner's statement inadmissible on other grounds.

statement of "the truth"—and the police view of "the truth" was made clear to petitioner. The petitioner repudiated each of the first two confessions shortly after it was made, and denied the truth of the third one at his trial.

(3) The record inspires substantial concern as to the extent to which petitioner's faculties were impaired by inadequate sleep and food, sickness, and long subjection to police custody with little or no contact with anyone other than police. This factor takes on additional weight in that petitioner, a Negro, had only a fifth-grade education. He had apparently never been in trouble with the law before.

For the foregoing reasons, the judgment below must be, and is,[8]

*Reversed.*

MR. JUSTICE BLACK, MR. JUSTICE CLARK, and MR. JUSTICE HARLAN concur in the result.

---

[8] At trial, petitioner moved for production by the State of all three confessions, as necessary to support his claim that the manner of their eliciting rendered them inadmissible. That these prior confessions might have been directly relevant to petitioner's central defense can scarcely be doubted; for example, it came out during the hearing on the motion to suppress that petitioner had initially confessed to killing his wife by shooting her—a claim contrary to his later confessions and to known facts later discovered—and this inconsistency lends some weight to petitioner's defense of nonvoluntariness. Perhaps there were other inconsistencies which petitioner could have shown, had he had access to the prior confessions. Under amended Rule 16 of the Federal Rules of Criminal Procedure, a federal defendant could, *prior to trial*, discover his own statements; it seems that under the new 1965 Texas Code of Criminal Procedure, Art. 39.14, pretrial discovery of petitioner's confessions would have been proper. Cf. also *Dennis* v. *United States*, 384 U. S. 855, 871, and n. 17 (1966). This Court has suggested that in some circumstances it may be a denial of due process for a defendant to be refused any discovery of his statements to the police. *Cicenia* v. *Lagay*, 357 U. S. 504, 510–511 (1958); *Leland* v. *Oregon*, 343 U. S. 790, 801–802 (1952). In light of our disposition of this case, however, we need not reach this question.