THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* URBANO SÁNCHEZ VEGA, Defendant and Appellant.

No. CR-63-381.          Decided March 31, 1969.

*Santos P. Amadeo, José Enrique Amadeo,* and *Manuel García Marrero* for appellant. *Rafael A. Rivera Cruz, Solicitor General,* and *J. F. Rodríguez Rivera, Deputy Solicitor General,* and *Adolfo Negrón Cruz, Assistant Solicitor General,* for The People.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

On May 13, 1963 appellant was convicted of arson in the first degree and sentenced to serve an indeterminate sentence of from ten to fifteen years in the penitentiary. He appealed on his own right. Having considered the briefs, we delivered, on June 5, 1964, a per curiam opinion affirming the judgment. On May 1, 1967 appellant filed a motion in the nature of coram nobis on the ground that because he was an indigent appellant and since he was not represented by counsel on appeal it was appropriate to set aside our judgment of June 5, 1964. In the opinion of February 15, 1968 we proceeded to set aside our previous per curiam judgment, and remanded the record in order that, pursuant to the provisions of Rule 12.2 of the Rules of Administration for the Court of First Instance counsel be designated to appellant to assist him on appeal. *People* v. *Sánchez Vega,* 95 P.R.R. 702 (1968).

The facts of the case are the following:

On August 13, 1962, appellant, Urbano Sánchez Vega, went to Zenón Rivera Cruz' house, and there threatened to

kill the latter and all his family. He was bearing a machete. The motive for all this was that Zenón Rivera Cruz' brother was in love with appellant's sister, to which appellant was opposed. On August 14, in the nighttime, he bought a gallon of gasoline and in the early morning hours of said day he sprinkled some of said gasoline in a corner of Zenón Rivera Cruz' house and set it on fire. Then he retired to sleep. As a result of the events of the 13th a warrant of arrest was issued against appellant for the offenses of aggravated assault and battery, carrying of weapons, and breach of the peace, all misdemeanors. This order was executed in the nighttime, that is to say, a few hours after the fire, by police officers, who at the same time arrested him for investigation in relation to the fire perpetrated two hours before.

Defendant having been submitted to trial, the evidence for the prosecution consisted of his written confession offered before the Justice of the Peace of Guaynabo and of certain circumstantial evidence to establish that the day before the occurrence of the facts charged against him appellant had had an argument with the owner of the house set on fire; that later he had bought a gallon of gasoline, and that the container of this inflammable liquid was found near the house. Several photographs showing the damages caused by the fire were also admitted in evidence.

As to the evidence on the voluntariness of the confession, the court ordered the withdrawal of the jury to hear the evidence on that question. As the latter was contradictory it then continued to hear evidence in the presence of the jury in order that the latter decide as to the voluntariness of the confession.[1]

---

[1] The case of *People* v. *Figueroa García,* 91 P.R.R. 707 (1965), where we adopted the rule that it is incumbent upon the judge and not upon the jury to decide as a question of law and of fact whether the confessions made by a defendant, offered in evidence at the trial, are admissible, is not applicable to the case at bar inasmuch as said trial was held in 1962.

Police sergeant Lugo Merced testified that: the police arrested appellant as a result of three warrants of arrest against him for the offenses of aggravated assault and battery, carrying of weapons, and breach of the peace; that the arrest was performed between 4:30 and 5:00 a.m. on August 14, 1962; that, "when we arrested him, as soon as we arrested him, we got him in the car and started to talk and he started to tell us"; that appellant admitted the facts "Immediately after we arrested him and got him in the vehicle to take him to the General Police Headquarters"; that appellant was taken to the detective division and there he was questioned in relation to the fire; that they arrived there at about 8:00 a.m.; there, appellant told sergeant Lugo the following:

". . . he regretted what he had done, having intended to burn the house, that he had done it because he was drunk and he had had certain problems with a member of said household and that whenever he drank rum he had the compulsion to burn, see, that he had repented thereof, that anything they could do to help him, please do it.

". . . that he had bought a gallon of gasoline at the intersection, in a gasoline station located at the intersection of the road from Guaynabo to Río Piedras; that he had taken it to his bedroom, to his room, his bedroom and that about 1:00 or 2:00 a.m. he got up; that it was quite wet and he had sprinkled the gasoline and had thrown a match to it. I asked whether he had placed the match real close and he said no, because gasoline catches fire when a match is thrown, that he had thrown two or three matches to start the fire; that he set fire to the corner of the house."

Sergeant Lugo continues testifying that about 9:15 appellant was taken before the Justice of the Peace of Guaynabo before whom he offered a written statement in relation to the same points, after being advised that he may or may not make a statement; and that any statement made by him could be used for or against him; and that if he made a statement he should do it spontaneously, voluntarily, without any coercion or

offering from anybody; that appellant was taken to the detective division "because we had to investigate, to finish the investigation, that is, we had the investigation of the fire and we took him so as to make his anthropometric chart and then take him before the magistrate, then we took him before the magistrate of Guaynabo"; that from the investigation performed up to appellant's arrest, "the investigation was making me suspect that the person was he [the appellant]."

1.—Appellant argues that his confession was inadmissible because it was the product of an illegal arrest.

■ Although it is true that appellant was arrested by virtue of three warrants of arrest for offenses not related to arson, it is nonetheless true that the evidence shows that immediately after his arrest he admitted having committed the latter offense. Hence he was taken to General Police Headquarters to make his anthropometric chart and to finish the investigation of the case. Said oral confession was voluntary and spontaneous. At the time of the arrest the police already had well-grounded suspicion of appellant's guilt of the arson in question.

■ Under the circumstances of this case we cannot conclude that there was undue delay in taking appellant before a magistrate. Furthermore, the confession admitted in evidence was not obtained during the term of the alleged delay. Actually the oral confession offered spontaneously by appellant when he was arrested was thereafter ratified in writing before the Justice of the Peace, subsequent to the warnings required at that time. So that since it was established that the latter was obtained voluntarily the trial court did not err in admitting it in evidence.

2.—Appellant assigns that the court erred in instructing the jury that "the law in Puerto Rico at the time defendant offered the alleged confession did not require, in order for it to be voluntary and spontaneous, that defendant at that time, at the time he offered the confession, be assisted by counsel."

In support of this assignment appellant cites *Johnson* v. *New Jersey*, 384 U.S. 719, 730 (1966), in which it was stated that appellant may invoke a substantive test of the voluntariness of his confession and that said test now takes specific account of the failure to advise the accused of his privilege against self-incrimination or to allow him access to outside assistance from the place where he is detained and subject to interrogatory by the police.

In *People* v. *Fournier*, 77 P.R.R. 208, 275 (1954) we said that the fact that he was illegally detained for three days without the opportunity to consult counsel is one of several factors which should be taken into consideration by the jury in passing on the voluntariness of a confession.

More specifically, appellant cites *Davis* v. *North Carolina*, 384 U.S. 737 (1966), and *Clewis* v. *Texas*, 386 U.S. 707 (1967), which reiterate the rule of the duty of courts to consider different circumstances in passing on the voluntariness of a confession, among which are the failure to advise defendant of his right to remain silent and of his right respecting counsel at the outset of interrogation.

In this case the evidence on the voluntariness was ample and sufficient. On the contrary, neither the prosecuting attorney nor the defense offered evidence of the existence of any of the circumstances which in the cases previously cited justified the conclusion that the confession offered was involuntary. The failure to advise appellant of his right to assistance of counsel is only one of the many factors which, if present, may justify the conclusion that a confession was involuntary.

■ On the date on which the confession in question was obtained the requirement to advise every defendant of his right to assistance of counsel in the stages before the prosecution had not yet been established. The failure to give such warning, as we have indicated, was only one of the many

factors to be considered by the jury in passing on the voluntariness of the confession.

3.—Appellant assigns that the trial court erred in failing to instruct the jury on the voluntariness of defendant's confession before the examining magistrate. He argues that the court should have instructed the jury that in determining whether or not the confession was voluntary it should have taken into consideration the following factors:

a) "The illegality of defendant's arrest by police officers."

b) "The fact that there was no probable cause to be arrested for the offense of arson."

c) "The term of arrest for the investigation of the offense of arson."

d) "The fact that the police, when investigating defendant-appellant, failed to warn him of his right to remain silent and to have assistance of counsel."

e) "The fact that the examining magistrate did not warn defendant-appellant of his right to assistance of counsel prior to his confession."

He is not right.

■ We have already indicated that appellant's arrest was not illegal and that there was probable cause to arrest him for the offense of arson, since prior to the arrest the police had connected appellant with the arson in question. We have also stated that there was no undue delay in taking appellant before a magistrate. Appellant admitted the facts in relation to the commission of the offense of arson as soon as he was arrested, and he ratified this in writing before a magistrate, subsequent to receiving the warnings required by law at that time.

■ 4.—Appellant maintains that the confession was offered before a magistrate having judicial functions; that said function (to determine probable cause for arrest and to fix bail) is similar to the function of the preliminary hearing in the State of Maryland, since said function in Puerto Rico

was the basis for the prosecuting attorney's information. He invokes the cases of *White* v. *Maryland*, 373 U.S. 59 (1963) ; *Hamilton* v. *Alabama*, 368 U.S. 52 (1961) and *Massiah* v. *Alabama*, 377 U.S. 201 (1964), where the right to assistance of counsel in certain stages of criminal prosecution was upheld. We do not agree. The function of the justice of the peace in a case like the one at bar is to determine probable cause for arrest and to fix bail. Although it is true that nowadays, and pursuant to Rules 4, 22, and 23 of the Rules of Criminal Procedure, an accused has the right to obtain legal aid from the very moment of his arrest (pursuant to *Rivera Escuté*, 92 P.R.R. 746 (1965) when "the investigation shifts to accusatory and is focused on a particular suspect for the purpose of eliciting a confession"), however, at the time of the events in this case, an accused did not have such right, although we had previously laid down that if the absence of attorney in a stage prior to his prosecution created such a situation which, if transferred to the trial, prevented a fair and impartial prosecution, the conviction should not stand. *Rivera* v. *Warden*, 80 P.R.R. 800 (1958). However, at that time, we had not yet recognized to an accused, as a question of positive law or as a constitutional question, the right to legal aid in stages prior to his prosecution.

██ Since long ago this Court has guaranteed the right to assistance of counsel at the arraignment, which was the decision in *Hamilton*, *supra*, in 1961. The cases of Massiah and White, *supra*, involve the question of the confession without assistance of counsel after the indictment, that is, after defendant was under the judicial power for trial. In the case at bar the confession was elicited before a Justice of the Peace during the stage of investigation and, pursuant to the law in force at that time defendant did not have the right to assistance of counsel. It was not shown either that the absence of an attorney created such a situation which prevented a fair and impartial trial. *Rivera Escuté, supra*.

■ As to the contention that in Puerto Rico we have always had a preliminary hearing as in Maryland, in *Rivera Escuté, supra,* we made a painstaking study in relation to § 44 of the Code of Criminal Procedure of Puerto Rico. Before Rule 23 of the Rules of Criminal Procedure went into effect "The preliminary hearing" did not exist in Puerto Rico. *Soto Ramos* v. *Superintendent Granja Penal,* 90 P.R.R. 711 (1964).

5.—Appellant assigns that the trial court erred in failing to instruct the jury on the effect of intoxication and defendant's criminal liability. He is right.

Section 41 of the Penal Code—33 L.P.R.A. § 87— provides that "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But, whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act."

■ The rule adopted in those jurisdictions, where provisions of law identical or similar to that contained in § 41 of our Penal Code prevail, is that voluntary drunkenness must be of such degree or extent that it will deprive defendant of his mental capacity to form the specific intent required by the Code for the conviction of a crime or degree thereof requiring such specific intent, and that the determination of that fact is essentially incumbent on the jury or on the court sitting without a jury. *People* v. *Rivera,* 70 P.R.R. 541, 544–45 (1949).

■ Section 398 of our Penal Code—33 L.P.R.A. § 1561 —expressly requires that in order to commit arson it is necessary that the latter be committed with the intent to destroy the building. *People* v. *Rodríguez López,* 96 P.R.R.

674 (1968). So then, in this offense the intent plays an important role, and the determination of whether or not it exists must be left entirely to the trier of the facts, which in this case was the jury which heard the case. *People* v. *Rosado*, 78 P.R.R. 416 (1955). There appears in the record that appellant requested an instruction on intoxication and it was flatly denied by the trial judge. An instruction on intoxication must be transmitted to the jury when evidence has been presented tending to prove defendant's intoxication before and at the time of committing the offense.[2] The fact that the trial judge did not permit the jury to decide whether defendant in this case was drunk to the point where he was incapable of forming or having the intent to destroy the building by setting fire to it, was an error which requires reversal of the judgment. *People* v. *Rosado, supra; People* v. *Pacheco Betancourt*, 92 P.R.R. 679 (1965); *People* v. *Soriano Rodríguez*, 92 P.R.R. 44 (1965); *People* v. *Andrades*, 83 P.R.R. 818 (1961); *People* v. *Febres*, 78 P.R.R. 850 (1956); and *People* v. *Rivera, supra.*

In view of the foregoing the judgment rendered in this case will be reversed and the case remanded for a new trial.

Mr. Chief Justice Negrón Fernández and Mr. Justice Blanco Lugo did not participate herein. Mr. Justice Santana Becerra concurs in the result.

---

[2] Defendant states in his confession that on the day of the facts he was drunk, that he continued drinking and at about 10:30 p.m. he bought the gasoline, without remembering where he bought it, because when he is drunk he forgets everything; that he burned the house because he was drunk and he had a bad impulse; that when he is not drunk he is a hardworking man. Policeman Lugo also testified that defendant, in his statement at police headquarters, told him that he was drunk.