**UNITED STATES of America ex rel. William F. McKNIGHT, Jr.**

v.

**Alfred T. RUNDLE, Supt.**

**Misc. No. 3938.**

United States District Court
E. D. Pennsylvania.

May 20, 1969.

Thomas C. Carroll, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for petitioner.

Arlen Specter, Dist. Atty., by Roger F. Cox, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION AND ORDER

WOOD, District Judge.

Relator entered a plea of guilty to charges of burglary, larceny, and receiving stolen goods in the Court of Quarter Sessions for Philadelphia County in 1963 and was sentenced to a term of imprisonment from one to ten years. In that same year, he was convicted on similar charges in Bucks and Montgomery Counties. The sequence of events involved in the convictions in each case are closely related. We have previously reviewed these circumstances with regard to relator's conviction in Bucks

County. We granted the writ in that case in a Memorandum and Order entered February 15, 1967. After a hearing and a review of these circumstances as they apply specifically to the Philadelphia County case, we have concluded that the writ must be granted in this case as well.

We reach this conclusion because we think that under the recent decisions of the Third Circuit in United States ex rel. Mathis v. Rundle, 394 F.2d 748 (1968) and United States ex rel. Chambers v. Maroney, 408 F.2d 1186 (filed January 22, 1969), relator was denied effective assistance of counsel due to the late appointment of his trial attorney. In these cases the Court decided that where appointment of counsel takes place so close to trial that inherent prejudice to the preparation of relator's case may be inferred, a prima facie case of denial of effective assistance of counsel is made out, and the burden of proving the absence of prejudice shifts to the state prosecuting authorities. This "prima facie ineffectiveness or the inherent prejudice due to late appointment of counsel may properly be overcome either by evidence produced by the state in an evidentiary hearing showing that there was no prejudice or by adequate *affirmative* proof *otherwise* appearing in the record demonstrating that the appellant (i. e. relator) was not prejudiced." *Chambers, supra,* p. 1190.

■ Relator's trial attorney did not appear at the hearing before us because he is no longer practicing in this jurisdiction. We must therefore decide this case upon review of the record and on affidavit from the trial counsel which was submitted in evidence at the hearing. In that affidavit, trial counsel stated that he currently resides and practices in San Francisco; that during the time relator's case arose, he was on leave from private practice for thirty days to assist the Voluntary Defender; that he received the file in relator's case along with a number of other files from the Defenders late in the afternoon the day before relator's trial; that he represented a number of accused indigents on the day of relator's trial; and that he could not have consulted with relator for more than five minutes prior to the entry of his guilty plea (Exhibit P–5). These conditions are substantially similar to those in *Mathis* and *Chambers,* and therefore a prima facie case of late appointment is made out and the burden of proving the absence of prejudice shifted to the prosecuting authorities.

We think that there were a "number of nonfrivolous questions which merited thoughtful consideration by counsel" which could not possibly have been investigated or discussed with his client in the brief span of less than five minutes before relator entered his guilty plea. Martin v. Commonwealth of Virginia, 365 F.2d 549, 552 (4 Cir. 1966); Fields v. Peyton, 375 F.2d 624 (4 Cir. 1967). A brief summary of the relevant background of relator's arrest and confinement is an appropriate prelude to consideration of the avenues which relator's counsel might have explored had he had more time to prepare his case. On the morning of March 23, 1963, relator, accompanied by his wife and four-year-old child, surrendered himself to the Bucks County police after hearing that they wished to question him concerning the burglarizing of a store the previous night. Relator's wife was directed to remain in the public area of the Middletown Township station while he was interrogated in a small room. During the interrogation, he fully denied any part in the burglary. Meanwhile, relator's wife was questioned and responded with a story which tended to corroborate what relator was saying. The officers admitted saying that relator's wife, who was holding her baby at the time, could be arrested as an accessory, and that if she were arrested, what happened to her child would be "a question for the state to decide." (Habeas corpus proceedings regarding Bucks County conviction, December 14–16, 1966, pp. 220–1, 245). Relator's wife then changed her story in a way to discredit relator's version of events. The

officers then confronted relator with his wife. Although the testimony is confused on precisely what happened during this confrontation, relator's wife was urged to implore relator to change his story. It seems reasonable to suppose that relator's wife was in a state of great agitation. Relator then confessed commission of the burglary the previous day, and later signed a statement to the same effect. The police then procured a search warrant to search relator's house for the goods taken in the course of the March 22 burglary. Upon arrival at relator's house, they found other goods which they concluded was evidence of other burglaries which they thought relator might have committed. In the course of the next several days, nearly two carloads of such goods were removed from relator's home and taken to the Middletown Township station where relator was confronted with it. In the aftermath of his confession on March 23 and the search of his residence, relator confessed to the commission of over fifteen burglaries to police from various counties. Apparently the Middletown Township police sought to identify the goods with various reported burglaries in their jurisdictions, and invited officers from other jurisdictions to come and do likewise. At least in most of the cases, relator confessed to burglaries when confronted with the goods that had been seized. Relator did not have counsel during this period.

On March 25, two Philadelphia police officers arrived, and relator orally confessed to one burglary in Philadelphia County. During the last week of March he was taken to Bucks County Prison where he remained until April 3. On April 3, he was taken to Philadelphia, where he orally confessed to another crime, but refused to give a formal written statement. After he was allowed another visit from his wife, he finally gave the requested written statement. There is no evidence that relator had counsel during this period. Also, during this period, relator manifested symptoms of severe psychological disturbance, and on April 5 he was committed to Norristown State Hospital on the affidavit of the Warden of Bucks County Prison and two physicians who recommended that relator obtain psychiatric treatment because they thought him to be mentally ill. On August 2 at his arraignment, relator pleaded not guilty as to the two charges against him in Philadelphia County, and at trial after less than five minutes discussion with appointed counsel he changed his plea to guilty.

Although the affidvait of relator's trial attorney states that he now has no specific recollection of what transpired during this discussion, it does not seem possible that during that time he could have made a reasonable evaluation of alternative courses of defense or explained to relator the alternatives he had and the possible consequences of each.[1] There is no clear indication that counsel was fully aware of the events in Bucks County. Had counsel been aware of these events, and had he allowed more time, he might have moved to suppress the statement given the Philadelphia police on the ground that it was involuntary,[2] or that the statement given the

---

1. Nor did the court inquire on the record as to the voluntariness of relator's plea.

2. The protections afforded to the accused prior to giving a statement by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) are not retroactive and therefore are not applicable here. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). However, relator may still contest the voluntariness of his statement under

standards promulgated prior to June 22, 1964. See 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; see also Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963); Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). In determining voluntariness under these standards whether the accused had counsel, and the extent to which he was apprised of his constitutional rights are very pertinent facts for consideration. See Brown v. Mississippi,

Bucks County police was involuntary, Perrygo v. United States, 55 App.D.C. 80, 2 F.2d 181 (1924); Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed. 2d 760 (1961), and there was no "break in the stream of events" or "intervening act of free will" between that statement and the statement to the Philadelphia police on April 3 so as to remove the taint of the initial statement. Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Commonwealth of Pa. ex rel. Craig v. Maroney, 348 F.2d 22 (3rd Cir. 1965), cert. den. 384 U.S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042 (1966). A motion might also have been filed to suppress evidence seized from relator's home on the ground that the warrant was defective because it was not accompanied by a certificate of probable cause, or oral testimony under oath (g. N.T. December 12, 1968, pp. 5–9), that the premises named on the warrant was not the one searched, or that the evidence seized had no relation to the crime then under investigation. Moreover, had he been fully aware of the severe psychological disturbances which relator had experienced, he might have sought a mitigation of sentence or treatment as an alternative to sentence. He would certainly have taken more care in studying relator's case and in advising him of the nature and consequences of the alternatives open to the defense.

■ Accordingly, we conclude that relator was denied the effective assistance of counsel because of the late appointment of his trial counsel and that he was thereby prejudiced. The writ will be granted unless the Commonwealth takes an appeal, or grants relator a new trial.

The Court wishes to express sincere appreciation to Thomas C. Carroll, Esquire for his excellent legal services in every respect and in the highest traditions of the American Bar. It is to be noted that he represented relator without compensation or reimbursement for expenses incurred.

297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936); Haynes v. Washington, *supra*;

## ORDER

AND NOW, this 20th day of May, 1969, IT IS ORDERED that the writ of habeas corpus is GRANTED. IT IS FURTHER ORDERED that issuance of the writ shall be suspended if the Commonwealth files an appeal within thirty days, or, in the alternative, the Commonwealth grants relator a new trial within forty-five days. IT IS FURTHER ORDERED that if the Commonwealth takes neither of the above steps, the writ shall issue as of course.

Gallegos v. Colorado, 370 U.S. 49, 54–55, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962).