Kenneth JORDAN, Petitioner-Appellant,

v.

H. J. CARDWELL, Warden, Respondent-Appellee.

No. 20071.

United States Court of Appeals, Sixth Circuit.

June 18, 1970.

---

Nelson G. Karl, Cleveland, Ohio, for appellant.

Leo J. Conway, Asst. Atty. Gen., Columbus, Ohio, Paul W. Brown, Atty. Gen., Columbus, Ohio, on the brief, for appellee.

Before PHILLIPS, Chief Judge, and CELEBREZZE and McCREE, Circuit Judges.

PHILLIPS, Chief Judge.

This is a habeas corpus case in which petitioner challenges his conviction in the state courts of Ohio.

On November 15, 1955, a jury in the Court of Common Pleas of Trumbull County, Ohio, found petitioner guilty of murder in the first degree in connection with the death of Sylvia Tanner. He was sentenced to life imprisonment. No appeal was taken from this judgment. Thereafter petitioner sought relief under the Ohio Post Conviction Statute in the Common Pleas Court of Trumbull County. On October 20, 1966, the State court denied relief after a hearing, but without the taking of additional evidence, the court relying upon the record in the original trial in the State court. The Common Pleas Court was affirmed by the Court of Appeals of Ohio on April 25, 1967. Petition for certiorari was denied by the Supreme Court of Ohio, and thereafter denied by the Supreme Court of the United States with Mr. Justice Douglas of the opinion that certiorari should be granted. Jordan v. Ohio et al., 393 U.S. 894, 89 S.Ct. 141, 21 L.Ed.2d 176.

Thereafter Kenneth Jordan filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Ohio. On May 9, 1969, the petition was denied without prejudice. Pursuant to petitioner's motion for rehearing on the order of denial, the District Court filed a Memorandum and Order in which the petition was denied on the merits. The District Court did not conduct an evidentiary hearing but, like the State court, relied upon the record from the trial proceeding in which petitioner was convicted. Petitioner appeals.

Petitioner raises several issues, the most important of which concerns the voluntariness of a confession he made which was introduced at his trial. In view of our disposition of the case we do not decide the other issues raised on this appeal. We hold that the District Court erred in dismissing the petition without an evidentiary hearing and reverse and remand.

Review of the transcript of the State court trial proceeding reveals the following:

A young girl, Sylvia Tanner, was killed on or about July 25, 1955. On August 1, 1955, two deputy sheriffs followed leads which they had gained and questioned six or seven Negro airmen attached to the Youngstown Air Force Base. One of these youths was Kenneth Jordan. Because, in the view of the police officers, Jordan appeared nervous, he was questioned a second time on August 1. The next day the two deputy sheriffs returned to the base with the prosecuting attorney, his assistant and his secretary. Jordan was again questioned. After this third interrogation he was taken into custody by the civil authorities after being released by the Air Force. He was held at the Youngstown City Jail. This was August 2, 1955.

At the time he was taken into custody Jordan on August 2 was a 17 year old youth who about a year previously had volunteered to serve in the United States Air Force, and was stationed at the Youngstown Air Base at Youngstown,

Ohio. He had never known his parents. He had grown up in a foster home in New Jersey. He had no relative or other friends in Youngstown not associated with the Air Force.

For eighteen days Jordan was held in the Youngstown Jail without being charged. He was questioned extensively by police officers and for periods of substantial duration. Precisely how many times he was interrogated and for what duration each time is not disclosed by the record. During his detention he was taken to the scene of the alleged crime. Throughout his detention and until the twentieth day, he consistently denied having committed the crime, although he told several conflicting stories, some of which admitted knowledge of the crime and implicated others in it. At no time during the period did Jordan have counsel nor did he speak with any lawyer. In fact the record shows that during the entire eighteen day period he spoke with no one other than police officers and military authorities. He was not advised prior to the day on which he gave his confession that he had a right to remain silent. He made no request for counsel and was never informed that he might have counsel appointed to represent him.

On August 20, the eighteenth day of his confinement, Kenneth Jordan informed the civil authorities that he desired to make a further statement and that he wished to speak with Lt. Col. Sidney Kay, the base Executive Officer. Col. Kay was summoned to the jail, and when Jordan indicated that he wanted to make a statement, Kay asked him if he knew about Article 31, referring to a provision of the Code of Military Justice which protects against self-incrimination. According to Col. Kay, Jordan said he knew of it, and Col. Kay said no more about it. At the trial Jordan denied that he knew what Article 31 protected.

After the talk with Col. Kay, Jordan was taken to the prosecutor's office. There, before a group consisting of three Sheriff's deputies, two Air Force officers, the prosecutor, and the prosecutor's secretary, Kenneth Jordan signed a written confession to the killing of Sylvia Tanner.

It is not disputed that immediately before the confession was taken but after he had decided to confess Kenneth was informed of his fifth amendment right to remain silent.

Two days later he was taken for the first time before the Juvenile Court of Trumbull County, Ohio.

Following an indictment by the Grand Jury for murder in the first degree he entered a plea of not guilty and thereafter on September 26, the court appointed counsel for him. Trial commenced on November 14. During the course of the trial the State sought to introduce into evidence the written confession and testimony with respect to it. Defense counsel objected on several grounds, one being that the confession was involuntary. The court thereupon excused the jury and heard testimony as to the taking of the confession and its substance. The court then ruled that the confession and testimony were admissible and the jury was recalled. At the conclusion of the evidence, the court instructed the jury as follows:

"With reference to the statements made by the Defendant himself, you should inquire whether or not these statements were given freely and voluntarily, or whether they were procured by means of promise or the hope of reward."

In addition to the facts established by the transcript Jordan further alleges that during his detention he was physically abused in that one of the officers hit him on the head. He contends that he was promised leniency if he confessed. It is further urged that Jordan had limited education, was untrained in law and was without counsel or even a friend during his long detention and interrogation. Also it is asserted that he made numerous confessions prior to August 20, but that each time upon reflection he promptly repudiated them.

The State disputes these allegations. It is said that there is no evidence of physical abuse of petitioner. It is contended that no promises were made to him. The State urges that Jordan did have a friend present in the person of Lt. Col. Kay and that there was no questioning without Col. Kay being present. The State further disputes that petitioner made any confession prior to August 20. It charges that he wove a web of false statements in an attempt to exculpate himself until finally he gave a "true" statement.

These factual questions were not resolved satisfactorily in the State court proceeding and there was no further resolution of them in the proceeding in the District Court. The factual disputes and the unresolved questions are critical in making a determination as to whether Jordan made a voluntary confession and a waiver of vital constitutional protections, or whether his will was overborne by the pervasive presence of law enforcement officers during his lengthy confinement.

We think Jordan has raised a serious and substantial challenge to the validity of his confession. See, e. g., Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423; Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895; Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325. There should be additional inquiry into the circumstances of the confession before a determination is finally made as to its voluntariness. It is significant that, except for the determination made at the trial by the same jury which determined his guilt, there has been no determination on the question of voluntariness. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

We reverse the judgment and remand the case to the District Court for an evidentiary hearing, with instructions that, if available, the District Court appoint the same counsel to represent Jordan in that proceeding who represented him on the present appeal before this Court.