THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
ARSENIO NAZARIO NIEVES, Defendant and Appellant.

No. CR-71-29.     Decided November 17, 1971.

*Santos P. Amadeo, Ángel M. Rodríguez Losada,* and *Bautista de la Cruz Sierra* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Federico Rodríguez Gelpí, Assistant Solicitor General,* for The People.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellant, having been convicted of the above-mentioned offenses* by a unanimous vote of the jury, brings before our consideration six assignments. They lack merit for the reasons stated below.

### 1.—*First Assignment*

"The trial court erred in failing to instruct the jury that even though defendant-appellant were not criminally responsible according to the Right and Wrong Test, however, the mental illness which defendant-appellant was suffering at the time he committed the offense, constituted a mitigating circumstance entailing the reduction of the offense from Murder in the First Degree to Murder in the Second Degree."

In support of this assignment he merely cites the monography entitled *Mental Disorder Affecting the Degree of a Crime,* published in 56 Yale L.J. 959–981 (1947).

No instruction on this particular was requested from the trial judge when the latter finished charging the jury and asked whether the prosecuting attorney or the defense had any objections to raise or any instructions to request. The defense answered no.

---

* COMPILER'S NOTE: The offenses are Murder in the First Degree and violation of § 4 of the Weapons Law.

Appellant did not allege any reasons or cite any jurisprudence whatsoever in support of his thesis, nor did he present an analysis of the evidence which could serve as a basis for his assignment.

There is no basis in the evidence to justify the instruction in question. On the contrary, the expert evidence for the defense, that is, Dr. Sanz Ortega's testimony, was to the effect that although appellant was suffering from an "affectivity disorder. . . . It is a rigid and cold affectivity . . ." having "certain ambivalence, he wants and does not want, desires and does not desire at the same time . . ."; is a person "extremely suspicious . . . has compulsive tendencies . . . perseveration especially for ideas which he has had constantly . . . in this patient there appear delirious . . . persecutory, poorly planned ideas, he does not persevere intensely on them; he does not stick to them permanently, they are changing . . . . He is mainly characterized by religious and mystic ideas," on or about August 9, 1963, that is, almost a year after the occurrence of the facts which was on September 28, 1962, appellant "Distinguished between right and wrong." Dr. Sanz also testified, after reading appellant's confession and after considering the hypothetical question of the prosecuting attorney,[1] where a recital was made of the facts of the case which culminated in the death of Fernando Pons Moller, as a result of the stab thrust into him by appellant, that ". . . from the interviews conducted by me, and from what I have read in

---

[1] The recital of the facts of the case in the hypothetical question was the following:

". . . a person who has had difficulty in obtaining something that he wants and who has not been successful in obtaining what he wants, who, as a consequence thereof decides to kill, plans and later on kills the person whom he considers was the one who has precluded him from obtaining what he wants, who after killing him, shortly after killing him, delivers himself to a police agent, and from 45 to 75 minutes later offers his statement—testifies on these series of facts, the motives for which he did it, and in doing so he does it in the manner appearing from this document—I refer to Exhibit 2 of The People. . . . ?"

the record, and from what I have heard here, and from all those things which you have explained, he did distinguish between right and wrong at the time of the events—also hypothetically."[2]

### 2.—*Second Assignment*

■ Appellant assigns that the trial court erred in instructing the jury that by agreement of the parties it would not make a summary of the evidence; that Rule 137 of the Rules of Criminal Procedure, requires that said summary be made. He cites the case of *People* v. *Millán,* 71 P.R.R. 410 (1950).

At the threshold we point out that the defense did not request the trial court to make any summary of the evidence, nor objected to nor requested any instruction whatsoever with respect to the waiver of said summary, when the trial judge finished his instructions in the course of which he informed the jury that "By agreement of the parties I am not going to make any summary of the evidence to you. . . ."

■ Rule 137 of the Rules of Criminal Procedure authorizes the court to omit the summary of the evidence when it is thus stipulated by the parties. It does not specifically require that defendant participate personally and intelligently in such stipulation. No reasons or authorities are cited to the effect that such stipulation be made by defendant himself, and not by his attorney, as has been the prevailing practice.

The waiver of the right to trial by jury, according to Rule 111 of the Rules of Criminal Procedure, must be made intelligently by defendant himself. He must be warned of the meaning of such waiver and of its consequences by the trial

---

[2] In relation to the rule on evidence on insanity, see *Molina* v. *Delgado, Warden,* 96 P.R.R. 185 (1968); *People* v. *Rivera Raquel,* 95 P.R.R. 553 (1967); *People* v. *Adorno Lorenzana,* 93 P.R.R. 768, 775 (1966); *People* v. *Superior Court,* 92 P.R.R. 113 (1965); *People* v. *Rosado Román,* 89 P.R.R. 14 (1963); *People* v. *Cruz,* 84 P.R.R. 433, 438–9 (1962); *People* v. *Alsina,* 79 P.R.R. 44, 57–59 and 66 (1956); *People* v. *Colón Morales, ante,* p. 39.

court. *People* v. *Juarbe de la Rosa,* 95 P.R.R. 736 (1968); *People* v. *Delgado Martínez,* 96 P.R.R. 703 (1968). The reason for such a rigorous rule is that the fundamental right to trial by jury is of a constitutional nature, is part of the due process of law, and ordinarily provides a guaranty of such high category in the process of imparting justice that its waiver should not be permitted without the person involved making it personally and intelligently, with full knowledge of its implications and consequences.

On the contrary, although the summary of the evidence is also a right granted to defendant by the Rules of Criminal Procedure, it is not of such fundamental character as the trial by jury, nor of constitutional nature, and its waiver does not entail consequences and implications which substantially affect defendant's rights. Moreover, it could be said that the waiver to the summary of the evidence is a question of procedural tactics. Defendant, especially when he is a layman on the matter, is not in a condition to make an intelligent decision on this matter and it would require an extraordinary effort to try to instruct him on the same so that he would make a determination with full knowledge of its implications with respect to said right. We believe that this is rather a procedural question which, for the benefit of defendant, is better to let his counsel continue resolving it.

In the cases cited by appellant it is accepted that the right to the summary of the evidence may be waived by the attorneys of the parties even though the statute does not expressly authorize such waiver. *People* v. *Millán,* 71 P.R.R. 410 (1950); *People* v. *Rodríguez,* 69 P.R.R. 913, 920 (1949).

In *People* v. *Rivera,* 83 P.R.R. 452, 466 (1961), we said that "Appellant's allegation to the effect that the fact that the presiding judge failed to sum up the evidence was prejudicial to him, is answered by the statement *of counsel for the defense* which appears in the record to the effect that he agrees that no such summary be made." (Italics ours.)

In *Cruzado* v. *People of P.R.*, 210 F.2d 789, 791 (1st Cir. 1954), the court held that "When an accused is represented by counsel, it is generally to be assumed that counsel adapts his trial tactics to what in his judgment is for the best interests of the accused. If the accused, being present, manifests no dissent, it is usually fair to assume that he approves of, or at least acquiesces in, the decisions taken in open court in his behalf by his counsel." See also, *People* v. *Figueroa*, 77 P.R.R. 175, 192 (1954), footnote 16.

In *People* v. *Figueroa*, *supra* at p. 192, it was also stated that "in the absence of an express statutory provision . . ., the action of the defendant through his counsel would ordinarily be binding." We have already pointed out that Rule 137 is silent on the "issue" raised herein.

■ Lastly, appellant has not shown that the omission of the summary in question has caused him any prejudice whatsoever to justify the reversal of the judgment. *People* v. *Rivera*, *supra* at p. 466.

■ 3.—*Third Assignment*

Appellant argues that the trial court erred in instructing the jury that:

*"The law does not favor the occurrence of sudden insanity produced by any impression whatsoever, without there actually existing any previous or subsequent indication of said condition of insanity in the subject nor is the question affected by the fact that the defendant was confined in an insane asylum.* (See pages 342 to 343 of the Transcript of Evidence.)" (Italics in the original.)

In support of this assignment the defense only maintains that the instruction is erroneous because the defense of sudden insanity was not invoked at any time whatsoever, and therefore, the instruction could have confused the jury as to the type of insanity alleged by appellant through his expert evidence.

We do not agree. Although it is true that there was no basis in the evidence to insert the expression now challenged for the first time, we do not believe that such isolated expression, not commented as possible defense, could confuse the jury when the same is within the extensive, well-reasoned, and appropriate instructions on insanity as a factor exempting from liability. The error, if committed, is unsubstantial and did not affect appellant's substantial rights nor prejudged his cause.

### 4.—*Fourth Assignment*

Appellant assigns that the following instruction is erroneous:

*"It is assumed that every witness speaks the truth, but said assumption may be overcome or repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his credibility, honesty, integrity or his motives, or by contradictory evidence, the jury being the sole trier of the credibility of the witnesses.* (See Tr. Ev. at pp. 335–336.)" (Italics in the original.)

Appellant maintains that the instruction is erroneous because it tends to weaken the assumption of appellant's innocence; because the jury may think that they must believe the testimony of the witnesses for The People, particularly when defendant has remained silent, and because said instruction constitutes an encroachment upon the functions of the jury to determine the credibility of the witnesses, and, furthermore, it is in conflict with the assumption of innocence when defendant remains silent. In support of these arguments, he cites the cases of *United States* v. *Evans*, 398 F.2d 159 (3d Cir. 1968); *Stone* v. *United States*, 379 F.2d 146 (D.C. Cir. 1967) and *United States* v. *Meisch*, 370 F.2d 768 (3d Cir. 1966).

The instruction challenged is in harmony with the provi-

sions of § 383 of the Code of Civil Procedure—§ 21 of the Law of Evidence (32 L.P.R.A. § 1664).[3]

Appellant does not challenge the lawfulness of this statutory provision. Not only does he fail to explain how and why he can maintain his challenge of the instruction in view of the clear terms of said provision, but he does not even refer to the same.

The judge went even further in giving specific instructions concerning the exclusive function of the jury in passing over the credibility of the witnesses, the extent of appellant's right to remain silent, specifically that it must not be understood as self-incrimination, and also concerning the presumption of defendant's innocence. Lastly, the judge explained to the jury clearly and in detail that it is incumbent upon them to weigh the evidence.

Obviously, the assignment lacks merit.

### 5.—Fifth Assignment

"The trial judge in instructing the jury on the voluntariness of defendant-appellant's confession, at no time whatsoever did he instruct the jury that in order to determine whether or not the confession was voluntary, it should take into consideration the fact that defendant-appellant had not been warned of his right to have assistance of counsel when he offered his confession to the prosecuting attorney conducting the investigation."

In support of this contention, appellant limited himself to cite the cases of *Clewis* v. *Texas*, 386 U.S. 707 (1967) and *Davis* v. *North Carolina*, 384 U.S. 737 (1966), where it was stated that in considering the voluntariness of a confession, the absence of warning of his right to be represented by a lawyer at the commencement of the interrogatory gives addi-

---

[3] Section 383 of the Code of Civil Procedure provides that:

"A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence."

tional weight to the other circumstances showing that his confession is involuntary. This was the situation in the cases decided prior to *Miranda* v. *Arizona*, 384 U.S. 436 (1966).

The trial of the case at bar was decided before the rule in *Rivera Escuté* v. *Delgado, Warden*, 92 P.R.R. 746 (1965), was established, which rule does not have retroactive effect: *People* v. *Adorno Lorenzana, supra*. Appellant's counsel limited himself to raise the preceding question; but fails to analyze the evidence adduced in relation to the taking of the confession for the purpose of showing that the same proves that the confession was involuntarily offered in order that he could argue that, in the light of the rule of *Clewis* and *Davis*, the instruction on the absence of assistance of counsel as an additional factor to be considered was justified, instruction which the defense did not timely request in the trial court.

We have examined the evidence, and the latter shows that appellant, after stabbing the deceased, approached policeman Reyes and showed and delivered to him a knife covered with blood and told him "that with that knife he had just killed a rascal, Director of Social Programs, from here, Bayamón"; that Reyes took appellant to the hospital to have a wound on his hand dressed; that from there Reyes immediately took him to the police station and from there to the office of prosecuting attorney Grajales, who, after talking with him for about seven minutes, referred him to the prosecuting attorney on duty, Mr. Cabrera, before whom (after warning him of his right to remain silent, and that if he testified he should do it freely and voluntarily, without having been threatened or coerced, that he had not been made any offer of any kind whatsoever, and that his testimony could be used against him) appellant delivered his confession and signed the transcript of the same.

While appellant was being taken care of at the hospital, there arrived a sergeant and five or six policemen sent, according to Reyes, "for defendant's security . . . because in

these cases nobody knows what the reaction of the relatives may be." At the police station, appellant stayed some 10 or 15 minutes, and he was taken before lieutenant Feijó. Reyes testified that the purpose of taking him to police station was "To ask him about his motives. . . . And to give information to my superiors concerning the investigation being conducted. . . . When we were at the police station the prosecuting attorney was notified . . . and I delivered defendant to detective Rodríguez . . . after having been brought to the prosecuting attorney . . . in order that they [the detective] would continue the process of taking photographs for criminal identification later on, and to submit the case to the judge with the evidence. . . ." Reyes testified that when appellant passed to the prosecuting attorneys' office, the policemen remained outside; that some time later, while the prosecuting attorney was talking to appellant, he, Reyes, left to continue with the investigation; that none of the policemen or any private citizen attacked or threatened appellant; that ". . . Those agents simply came accompanying me for the purpose of defendant's security; instructions given to me by my superiors to remain there." The stenographer of the prosecuting attorneys testified that appellant was brought by Reyes to the prosecuting attorneys' office; that the latter talked with them for awhile, and then the witness was called to take appellant's typewritten statement after making the pertinent warnings which were explained in detail; that appellant was not attacked or coerced in order to elicit his statement, which he offered voluntarily. Prosecuting Attorney Grajales testified in similar terms. The evidence on the voluntariness previously offered before the trial judge was repeated before the jury. *People* v. *Figueroa García*, 91 P.R.R. 707, 718 (1965).

■ The foregoing summary of the evidence on voluntariness shows the absence of the factors which in *Davis*, as well as in *Clewis*, justified the conclusion that in those cases the confession was offered involuntarily and that the absence of

counsel constituted an additional factor in support of the involuntary character of the confession.

The foregoing shows that the best practice indicates that appellant must offer us a careful and detailed analysis of the pertinent evidence where assignments like the one under consideration so require.

On the contrary, the trial judge properly instructed the jury with respect to the confession.[4]

---

[4] The instruction in question was the following:

"JUDGE: . . . I had previously instructed you and I instruct you now that the jury cannot consider a confession unless they are convinced, not only that the same was made, but also that it was made voluntarily. It is incumbent upon you to determine whether the confession allegedly offered by defendant was offered by the latter freely, spontaneously, and voluntarily; that is, without any physical threat, psychological coercion, coercion, any promise of benefit, leniency, protection; in other words, whether there is complete absence of any factor which could, in spite of defendant's desire, induce him to offer the confession.

"As I have previously instructed you, the burden of the proof is on The People, in order to establish the voluntariness of the confession. In considering whether or not the confession in this case was voluntary, you must take into consideration defendant's age, his physical and mental condition at the time he offered the statement, his preparation, the environmental circumstances at the moment of producing the confession, the limit of time used in the process of the confession, the persons present or absent, persons who have intervened in the process of the confession, etc. . . .

"If the jury should determine that defendant's confession was offered voluntarily you must determine, then, the weight you should give to it, like in the case of any other evidence duly admitted.

"If the jury considers that the confession was involuntary, you should reject it and disregard it.

"The jury is not bound to accept that the facts occurred exactly in the same manner expressed in the confession offered by defendant, since, that would be leaving to the discretion of said defendant the elucidation of the truth.

"The jury judges, examines, weighs, and assays all the evidence.

"The confession in this case is part of the evidence and the jury may weigh it in the light of and in relation to the rest thereof and proceed to act in the manner they consider just according to their conscience and the principles of law. For the rule that a confession should be considered as a whole does not bind the jury to give the same credit to each one of its parts. The jury may believe the part which it deems credible and reject any portion which does not merit its trust.

"If you have doubt in this case as to whether or not the confession

### 6.—*Sixth Assignment*

"Defendant-appellant MAINTAINS that the judgment rendered against him must be reversed because he was deprived of his right to assistance of counsel during the preliminary hearing held before the prosecuting attorney, the latter acting as agent of the examining magistrate and by the examining magistrate himself, who on the basis of defendant-appellant's confession taken by the prosecuting attorney, and from the testimonies of other witnesses, issued a warrant of arrest ordering the imprisonment of defendant-appellant.

"The confession obtained from defendant-appellant by the prosecuting attorney, without assistance of counsel, and which was used to determine whether there existed probable cause, not only to accuse him, but also to arrest him, was also inadmissible. The confession obtained by the prosecuting attorney from defendant-appellant and from other witnesses and which confession and statements were used by the prosecuting attorney to determine probable cause to accuse defendant-appellant, not only in violation of the doctrine in the cases of *White* v. *Maryland,* 373 U.S. 59 (1963); *Arsenault* v. *Massachusetts,* 393 U.S. 5 (1968); *Pointer* v. *Texas,* 380 U.S. 400; and *Coleman* v. *Alabama,* 399 U.S. 1 (1970), but also in violation of the doctrine in the case of *Coolidge* v. *New Hampshire,* 29 L.Ed.2d 564 (1971)."

The prosecuting attorney accepted that ". . . during the time that defendant was in the office of the prosecuting attorney and during which he offered a confession in relation to the facts, he did not have assistance of counsel." The evidence shows that he was not represented by a counsel from the time he approached policeman Reyes until the latter took him to the prosecuting attorneys, that is, during all the process of the investigation.

Appellant's assignment is grounded on the fact that the act during which appellant talked with prosecuting attorney Grajales, and later on, when he confessed before prosecuting

---

was voluntary, you must give defendant the benefit of the doubt and determine that the same was not voluntary."

attorney Cabrera, constituted a preliminary hearing held by the prosecuting attorneys as agents of the examining magistrate.

The cases cited by appellant in support of this assignment do not support it. *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971), 29 L.Ed.2d 564, decides that an order for the search and seizure of an automobile issued by the Attorney General of the State does not satisfy the requirement of the Fourth Amendment of the Constitution of the United States, because it was not issued by a "neutral and detached magistrate." In *White* v. *Maryland*, 373 U.S. 59 (1963), it was decided that, arrested on a charge of murder, petitioner was taken before a magistrate for a preliminary hearing and when arraigned, he pleaded guilty without having assistance of counsel, said hearing was a critical stage in the proceeding which required assistance of counsel, and hence, such plea of guilty was not admissible at the trial.

■ In the case at bar appellant pleaded guilty twice, one time freely and spontaneously in the presence of policeman Reyes, and the second, by formal confession which he signed before the prosecuting attorney after receiving the pertinent warnings. The evidence shows that this second confession was voluntary. He need not then be warned that he had the right to be represented by counsel at that stage of the proceedings, since the trial in this case was held some months prior to the decision in the *Rivera Escuté* case, *supra*.

The facts in the case at bar are similar to those in *People* v. *Vergara Vázquez*, 99 P.R.R. 311 (1970), in which we affirmed the prospective rule in *Rivera Escuté, supra*.

The circumstances in *Coolidge* and *White, supra*, are completely different to the case at bar. The doctrine that the search warrant must be issued by a magistrate has been in force in Puerto Rico for a long time. It is not involved in the case at bar. On the other hand, it has not been established

by appellant, in any manner whatsoever, that the prosecuting attorney, in receiving appellant and taking his confession, necessarily acted as an agent of the examining magistrate and that his aforesaid action is of the nature of a preliminary hearing. We agree with the Solicitor General that appellant's argument is intended to date back the doctrine in *Rivera Escuté, supra,* to the date of the prosecution in this case, when we have repeatedly stated the contrary.

In view of the foregoing, the judgment rendered in this case by the Superior Court, Bayamón Part, on April 15, 1964, will be affirmed.

Mr. Chief Justice Negrón Fernández as well as Mr. Justice Hernández Matos and Mr. Justice Torres Rigual took no part in the decision of this case.