■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH COLLINS, Appellant.—Appeal by defendant from a judgment of the County Court, Nassau County, rendered May 31, 1974, convicting him of rape in the first degree and assault in the third degree, upon a jury verdict, and imposing sentence. Judgment affirmed. No opinion. Cohalan, Acting P. J., Christ, Brennan and Munder, JJ., concur; Shapiro, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum: The fact that the crime here charged is a most vicious one naturally causes one to cringe, but it does not justify a disregard of defendant's basic constitutional right to a fair trial. A statement made by defendant—which established a strong prop in the chain of evidence against him—was refused suppression. Its receipt in evidence, in my judgment, constituted substantial error as a matter of law. It should have been suppressed because the record makes it clear that before making the inculpatory statement defendant repeatedly requested counsel; at no time did he knowingly and intentionally waive his constitutional rights. One of the People's witnesses at the *Huntley* hearing, Detective Furno, testified that after he advised defendant of his *Miranda* rights the latter said he did not understand the meaning of the word "attorney". He was then told that an attorney was a lawyer. The following colloquy then took place, according to Furno: "A Well, at one point I said that, you know, if he couldn't afford a lawyer, the county would take care of getting a lawyer for him. Then he asked me, he says, 'They will

give me a lawyer?' I said, 'They will appoint a lawyer for you.' And he said, 'Which one?' And I said, 'I don't know which one. Either Legal Aid or a court-appointed lawyer.' I said, 'If you cannot afford one, they will appoint one.' Q Did you ask him if he wanted a lawyer then? A Well, then I said— well, he said, 'Okay.' And then I told him, 'Do you understand these rights? Do you want to talk to a lawyer now? Do you want to talk to one?' And he said, 'Could you advise me of which one?' And I said, 'No, I'm not allowed to do that.'" Thus, despite defendant's request that he advise him "of which one", i.e., either Legal Aid or a court-appointed lawyer, Furno refused to interpret defendant's answer as a request for counsel.* The detective then testified that at this point, even though defendant stated that he understood his rights, he (Furno) did not believe that to be the case; he then quickly read defendant his rights for a second time. Defendant said "yes, okay" in response to the question whether he understood what had been read to him. Furno then proceeded to question him. After several minutes that questioning was followed by questioning of defendant by Detective Morrissey, who had come into the room, and who again asked defendant if he understood his rights. After defendant replied affirmatively, Morrissey elicited the inculpatory statements thereafter refused suppression. In my opinion, defendant's request for the recommendation of an attorney (either Legal Aid or a court-appointed attorney) was not only tantamount to, but was a direct request for the aid of counsel (cf. *People v Watts,* 35 AD2d 802, affd 29 NY2d 571). All questioning of defendant should have ceased at that point and Morrissey's questions, which came only minutes after defendant's request for counsel, should be considered as one uninterrupted interrogatory process (see *People v Valerius,* 31 NY2d 51; *Clewis v Texas,* 386 US 707, 710). In sum, as the court said in the now famous *Miranda* case *(Miranda v Arizona,* 384 US 436, 444–445): "If, however, he [the defendant] indicates *in any manner* and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning" (emphasis added). That indication was more than clear in this case. I am also of the opinion that sufficient basis was established for the admission of the statistical data sought to be elicited from the witness Dr. Primavera and that its exclusion by the court was error (2 Bender's New York Evidence, § 53.02, subd [1]).

---

* It should be noted that Detective Furno admitted that he believed that defendant was an indigent person who was eligible for Legal Aid representation. In this connection the statement in appellant's brief—not disputed by the People—becomes very relevant. It is there stated: "It should be noted that the Nassau County Police Department precincts have in their possession telephone numbers of staff attorneys of the Legal Aid Society of Nassau County and that these attorneys are in fact frequently called by Nassau County police officers to appear at line-ups and interrogation sessions on behalf of indigent persons charged with crimes."