WALLACE M. WALTERS *v.* WARDEN OF THE
CONNECTICUT STATE PRISON

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued June 14—decided July 6, 1967

*Jerome E. Caplan,* with whom, on the brief, were *Melvin L. Wulf* and *Leslie H. Levinson,* both of the New York bar, for the appellant (plaintiff).

*Arlen D. Nickowitz,* assistant state's attorney, with whom, on the brief, was *Otto J. Saur,* state's attorney, for the appellee (state).

Alcorn, J. On March 22, 1956, the plaintiff was indicted for the crime of murder in the first degree

in the perpetration of a robbery, and, following his conviction by a jury, he was sentenced to life imprisonment on June 26, 1956. He appealed to this court from that judgment, and we sustained the conviction on January 28, 1958. *State* v. *Walters,* 145 Conn. 60, 138 A.2d 786. Certiorari to the United States Supreme Court was denied on October 13, 1958. *Walters* v. *Connecticut,* 358 U.S. 46, 79 S. Ct. 70, 3 L. Ed. 2d 45. The plaintiff has been a prisoner in the state prison since the date of his conviction. On February 15, 1965, he brought, to the Superior Court, the present application for a writ of habeas corpus, alleging that his conviction and imprisonment are unlawful and in violation of the fourth, fifth and sixth amendments and of the due process clause of the fourteenth amendment to the United States constitution and of article first, §§ 8, 9, 10, 13 and 14 of the Connecticut constitution. The applicability of only a portion of the broad sweep of these constitutional provisions was actually pursued, however. The supporting grounds for the relief sought are, in substance, that a statement given by the plaintiff to the police and in part overheard by the coroner was involuntary and was made when he was illegally under arrest; that he was denied the right to counsel at a crucial stage of the proceedings against him and was confronted with property illegally seized; that items of property were obtained by an illegal search and seizure; and that the plaintiff's statement, the items obtained in the illegal search, and the coroner's testimony concerning a part of the plaintiff's statement were improperly admitted in evidence against the plaintiff at his trial. The writ issued and, following a full hearing, judgment was rendered denying the petition. Pursuant to § 52-470 of the General Stat-

utes, the judge before whom the case was tried, on application of the plaintiff, certified the judgment for review by this court and permitted the plaintiff to pursue the appeal in forma pauperis.

Basically, the plaintiff seeks a review of his conviction of eleven years ago, claiming that it resulted, in large measure, from the use of unlawfully obtained evidence and incriminating statements. The incriminating statements both to the police and as overheard in part by the coroner are claimed to be tainted because they were involuntary and were obtained while the plaintiff was illegally in custody and without the benefit of counsel. The physical evidence is claimed to have been obtained by the police either from the plaintiff's person, his automobile or his apartment without a search warrant and under circumstances which did not justify the lack of such a warrant.

The plaintiff did not raise, in the trial court, and under the normal procedural requirements, any of the claims now made. Nor were they raised in this court on appeal. *State* v. *Walters,* supra; see *O'Connor* v. *Ohio,* 385 U.S. 92, 87 S. Ct. 252, 17 L. Ed. 2d 189; *State* v. *Wilkas,* 154 Conn. 407, 409, 225 A.2d 821; *State* v. *Vars,* 154 Conn. 255, 272, 224 A.2d 744.

We have very recently had occasion to decide under what circumstances federal constitutional claims which were not made on an appeal may be raised collaterally by habeas corpus. *Vena* v. *Warden,* 154 Conn. 363, 366, 225 A.2d 802. In that case we concluded that the petitioner must allege and prove facts which will establish that he did not deliberately bypass the assertion of available federal constitutional claims in the orderly procedure of a direct appeal. See *Fay* v. *Noia,* 372 U.S. 391,

439, 83 S. Ct. 822, 9 L. Ed. 2d 837. As will later appear, the claims now made were without support in the law as it existed at the time of the plaintiff's trial and appeal eleven years ago. Consequently, it cannot be said that the plaintiff knowingly avoided the claims by not making them in that appeal.

The court has made a finding which the plaintiff has vigorously attacked. The basic material facts, with such corrections in the finding as the plaintiff is entitled to, are as follows: The dead body of a woman was discovered in a parking lot at the rear of a bank in Bridgeport early in the morning of February 10, 1956, and the police began an investigation of her apparent murder. The police obtained the description of a 1950 Lincoln automobile bearing Florida number plates which had been seen coming out of the parking lot on the preceding night. At about 10:30 p.m. on February 10, 1956, the police stopped a Lincoln automobile answering that description which, at the time, was being driven by the plaintiff. They told the plaintiff that they were investigating a minor accident and asked him to drive to police headquarters, which he did, followed by the officers. Upon arrival at the headquarters he was immediately taken upstairs for questioning. At that time, the only evidence against him was the similarity of his automobile to that described to the police as having been seen near the murder scene. While the plaintiff was in the police headquarters, officers searched his automobile, which was parked outside, and found a number of items in the trunk which were later introduced in evidence at the trial. Shortly after this search, the police learned, from a passenger who had been in the plaintiff's automobile when it was stopped, that, at about 8 p.m. on February 9, he had parted from the

plaintiff in the parking lot where the dead woman's body was found. The plaintiff was questioned by the police for about two and a half hours prior to 3:45 a.m. on February 11, and during this time he gave several conflicting accounts of his activities on February 9. The police also went to the plaintiff's apartment and, from there, brought his wife to police headquarters for questioning. Although advised that he was being detained on suspicion of first-degree murder, the plaintiff was, at about 3:45 a.m. on February 11, arrested on the charge of "breach of peace—investigating", a holding charge then in use by the police. Later that same morning, he was presented in the Bridgeport police court on the same charge. Sometime early that morning, his wife was similarly charged and remained in custody about three days. Prior to his arrest, the clothing the plaintiff was wearing was taken from him, and, after being brought to police headquarters, his wife volunteered to, and did, go with police officers to the apartment which she occupied with the plaintiff. She admitted the officers to the apartment, took therefrom a shirt and shoes which she said her husband had worn the night before and gave them to the officers. The police did not search the apartment, and the articles thus delivered to them were later introduced in evidence at the trial.

On February 12, the plaintiff was again questioned by the police at the county jail for about an hour. About 11 a.m. on February 13, he talked with one of the officers and told him that he did not need a lawyer. At about 2:45 that afternoon he gave a statement to the police in question and answer form. The interrogation lasted about an hour and a half and was transcribed by a stenographer, after which, on February 14, the plaintiff

refused to sign it. Before commencing the statement, the plaintiff was told that he could make the statement or not as he wished, and he chose to make it. The only persons present at the time were the plaintiff, a police lieutenant, and a girl stenographer. At the outset the plaintiff stated, in response to questions, that "[n]obody forced me to tell this story", that the police had neither threatened him nor made him any promises, and that he knew he had been arrested because "a lady had been murdered". Neither strong language nor threats were used toward him, and he had not been abused in any way. He thanked the police on several occasions for the kind and considerate treatment accorded him.

During the trial, the state, in the course of cross-examining the plaintiff, questioned him concerning answers contained in the typed statement of February 13, and the plaintiff denied making some of the answers read to him. Thereupon his attorney suggested that, if the state was reading from the plaintiff's statement, the whole statement should be submitted to the jury as an exhibit. The state then offered the entire statement as an exhibit, and it was received in evidence without objection.

The items taken from the plaintiff's automobile and the shirt and shoes furnished by his wife were introduced in evidence. The coroner was permitted to testify that he heard the plaintiff say, in substance, at police headquarters, in the early hours of February 11, that he had been at home with his five children on the night of the murder, which was contrary to the plaintiff's testimony at his trial, and also that he heard him identify a green shirt, which was shown to him, as one he had worn. The police had had no search warrant to search the

plaintiff's person, his automobile, or his apartment.

We first consider the brief bit of testimony by the coroner and the offer in evidence of the transcribed statement of which the plaintiff now complains. In the recent case of *State* v. *Hassett,* 155 Conn. 225, 228, 230 A.2d 553, we pointed out the distinction between a statement and a confession. It is unnecessary to repeat here what was said in that case except that voluntariness is the test of the admissibility of a statement as well as of a confession. In the *Hassett* case, however, it was conceded that there was a legal arrest. In the present case, it is claimed that the plaintiff was illegally arrested and was being illegally held in custody.

It is unnecessary to decide whether the plaintiff's arrest and detention on the charge of "breach of peace—investigating" was illegal, because we may assume, for the purposes of this discussion, that the arrest and detention were, at the time of the statement in issue, illegal. The basic situation is not unlike that presented in *State* v. *Traub,* 150 Conn. 169, 187 A.2d 230, judgment vacated and case remanded for reexamination, 374 U.S. 493, 83 S. Ct. 1899, 10 L. Ed. 2d 1048, although in that case the admissibility of a confession was involved. We said in that case (p. 173) that "it is settled law that the existence of an illegal arrest and detention does not automatically render inadmissible confessions made after the arrest or during the period of detention." And, after reexamining that decision in the light of *Wong Sun* v. *United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441, and *Ker* v. *California,* 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726, which had been subsequently decided, we concluded that a confes-

sion made during an illegal detention is inadmissible until the state proves (1) that the confession was truly voluntary and (2) that it was not caused or brought about by, or the fruit of, the illegal detention. *State* v. *Traub,* 151 Conn. 246, 250, 196 A.2d 755, cert. denied, 377 U.S. 960, 84 S. Ct. 1637, 12 L. Ed. 2d 503. We apply that rule to the statement in the present case, and we examine the circumstances surrounding the statement in issue in order to determine whether it was truly voluntary as the court concluded it was; *State* v. *Hassett,* supra; and whether it was caused or brought about by or was the fruit of what we assume to be, for purposes of discussion, an illegal arrest and detention.

The plaintiff further urges that his statement must be held to be involuntary and therefore inadmissible because, at the time it was made, he was a "prime suspect" in the murder, and at that critical stage of the proceedings he was without the benefit of counsel. In advancing this claim, he attempts to invoke the rule announced in *Escobedo* v. *Illinois,* 378 U.S. 478, 490, 84 S. Ct. 1758, 12 L. Ed. 2d 977. Even if we could find all of the elements of that rule to be present in this case, a finding which the record in this appeal does not warrant, the claim would still fail. The *Escobedo* case was decided on June 22, 1964, and the rule which it enunciated affects directly only those cases in which trial began after that date. *Johnson* v. *New Jersey,* 384 U.S. 719, 721, 86 S. Ct. 1772, 16 L. Ed. 2d 882. As already indicated, the plaintiff's trial had concluded approximately eight years before that date.

Finally, the plaintiff attempts to invoke, with respect to his statement, the rule established by *Miranda* v. *Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694. That case was decided on

June 13, 1966, and its doctrine directly applies only to cases in which the trial began after that date. *Johnson* v. *New Jersey,* supra.

It is clear therefore that the rules announced in the *Escobedo* and *Miranda* cases cannot be applied directly to the present case although they are relevant on the issue of voluntariness. *Clewis* v. *Texas,* 386 U.S. 707, 87 S. Ct. 1338, 18 L. Ed. 2d 423. "[T]he nonretroactivity of these decisions will not preclude persons whose trials have already been completed from invoking the same safeguards as part of an involuntariness claim." *Johnson* v. *New Jersey,* supra, 730; *State* v. *Darwin,* 155 Conn. 124, 147, 230 A.2d 573. Consequently, in determining the voluntariness of the plaintiff's statement, we consider the assumed illegality of the arrest and detention, the lack of counsel, and the sufficiency of the warning which preceded the transcribed statement among the totality of circumstances under the rule of *Culombe* v. *Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037.

The circumstances of the present case vary widely from those found to exist in *Clewis* v. *Texas,* supra. In the present case, the police talked to the plaintiff three times in a period of slightly over two and a half days. The substance of only the last conversation, which lasted an hour and a half, is known. The plaintiff was told that he need say nothing, but he chose to answer the questions of the police. He was not mistreated, and he told the police that he did not need an attorney. His statement was made in the presence of one police lieutenant and a girl stenographer and was, not a confession, but a denial of any crime. He knew that he was being detained as a murder suspect, and he repeatedly expressed

appreciation for the treatment accorded him by the police.

We find nothing in the assumed illegality of the arrest and detention or in the other circumstances surrounding the statement to warrant disturbing the conclusion of the trial court that the statement was voluntary.

The coroner's testimony was elicited when the coroner was called by the state as a rebuttal witness. The testimony was not objected to. The claim now made concerning it is that the plaintiff's statements which the coroner testified he had overheard were subject to the same taint as the transcribed statement to the police. This claim has been sufficiently answered by what we have said concerning the statement to the police.

The plaintiff's claim that the items of property obtained by a search of his person, his automobile and his apartment were inadmissible may be considered together. Here again it is unnecessary to decide whether any or all of those searches were illegal, and we may, for purposes of discussion, assume their illegality. Until the decision in *Mapp* v. *Ohio,* 367 U.S. 643, 648, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, it was the established law in this state that evidence, even though obtained by an unlawful search and seizure, was nevertheless admissible in a criminal proceeding. *State* v. *Del-Vecchio,* 149 Conn. 567, 572, 182 A.2d 402. Since the decision in the *Mapp* case, we have, in accordance with that decision, held that illegally seized evidence is inadmissible. The *Mapp* case, however, was decided on June 19, 1961, nearly three years after the plaintiff's case had been tried, appealed to and decided by this court, and had been denied certiorari in the United States Supreme Court. The

exclusionary rule set forth in the *Mapp* case does not apply to state court convictions which had become final before June 19, 1961. *Linkletter* v. *Walker,* 381 U.S. 618, 637, 85 S. Ct. 1731, 14 L. Ed. 2d 601. Consequently, under the rules of evidence applicable at the time of the plaintiff's trial, the question whether the property obtained from a search of his person, his automobile or his apartment was legally or illegally seized was immaterial to its admissibility. *State* v. *Mariano,* 152 Conn. 85, 90, 203 A.2d 305, cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962.

There is no error.

In this opinion the other judges concurred.