**UNITED STATES ex rel. Wallace Mack WALTERS**

v.

**Frederick REINCKE, Warden, Connecticut State Prison.**

Civ. No. 12692.

United States District Court, D. Connecticut.

June 24, 1969.

Jerome E. Caplan, Hartford, Conn., for petitioner.

Arlen D. Nickowitz, Asst. State's Atty., New Haven, Conn., for respondent.

## MEMORANDUM OF DECISION ON PETITION FOR A WRIT OF HABEAS CORPUS

BLUMENFELD, District Judge.

This is a petition for a writ of habeas corpus by Wallace Mack Walters, who was convicted of first degree murder in the Superior Court of Connecticut for Fairfield County on June 26, 1956, and sentenced to life imprisonment. His conviction was affirmed on appeal to the Supreme Court of Connecticut. State v. Walters, 145 Conn. 60, 138 A.2d 786, cert. denied, 358 U.S. 46, 79 S.Ct. 70, 3

L.Ed.2d 45 (1958). Subsequently, his application for a writ of habeas corpus in the state courts was denied after an evidentiary hearing. This denial was affirmed on appeal. Walters v. Warden of Connecticut State Prison, 155 Conn. 316, 232 A.2d 112 (1967).

In this court, he alleges the same grounds presented in the state habeas corpus proceedings—that statements made by him while in custody, and subsequently admitted into evidence at trial, were involuntarily given. An order to show cause why the writ should not be granted was issued, United States ex rel. Walters v. Reincke, Civ. No. 12,692 (D. Conn., Aug. 16, 1968), and a hearing was held on September 16, 1968. When the petitioner complained that underneath the conclusions of the state habeas court there were not established findings and theories falling within definable limits on the issue of legality of the petitioner's arrest, and subsequent searches, which he contended could be elicited from the state court record on direct appeal, the court instructed the parties to submit proposed additional findings of facts and responses, supported by applicable excerpts from the record. Cf. 28 U.S.C. § 2254(e).

After the proposed additional findings and responses were submitted, the court, taking an expansive view of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L. Ed.2d 770 (1963), acceded to the contention of the petitioner that all the historical facts necessary for the resolution of the petitioner's claims may not have been adequately resolved in the state habeas corpus proceedings,[1] see 28 U.S.C. § 2254(d)(1); Townsend v. Sain, supra at 314, 83 S.Ct. 745, 9 L.Ed.2d 770 and ordered that an evidentiary hearing re-

lating to these additional facts be held. United States ex rel. Walters v. Reincke, Civ. No. 12,692 (Jan. 17, 1969). After a pretrial conference during which the respondent, in the spirit of cooperation and candor, stipulated to many of the proposed additional findings of facts, an evidentiary hearing, limited to those few remaining in dispute, was held on April 21, 1969. At this hearing, the petitioner and two of the police officers who arrested and interrogated him testified.

The facts as found by the state court were fairly found and are not in dispute. The few additional facts which were the subject of litigation in this court have been added, in brackets, to the recitation of the Supreme Court of Connecticut in Walters v. Warden, supra, 155 Conn. at 320–323, 232 A.2d at 114–115:

"The dead body of a woman was discovered in a parking lot at the rear of a bank in Bridgeport early in the morning of February 10, 1956, and the police began an investigation of her apparent murder. The police obtained the description of a 1950 Lincoln automobile bearing Florida number plates which had been seen coming out of the parking lot on the preceding night. At about 10:30 p. m. on February 10, 1956, the police stopped a Lincoln automobile answering that description which, at the time, was being driven by the plaintiff. They told the plaintiff that they were investigating a minor accident and asked him to drive to police headquarters, which he did, followed by the officers. [This was a ruse. There was, in fact, no minor traffic accident that the police were investigating, and the police had stopped the petitioner's car solely because it fit the description of the vehicle the police suspected might be involved in

---

1. Under a strict reading of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), a *de novo* hearing on whether the statement was voluntarily given was not necessary, as there was no indication—or claim—that the facts which were found by the state court were incorrect or not fairly supported by the record. The testimony of the witnesses at the hearing in this court and the evi-

dence offered confirmed this. Since a few facts relevant to the legality of the arrest and custody of the petitioner and to the searches in question, although fairly inferable from the Connecticut Supreme Court's findings, were not expressly found, the court decided to give the petitioner an opportunity to establish these facts. See 28 U.S.C. §§ 2254 (d)(1) and (3).

the murder.] Upon arrival at the headquarters he was immediately taken upstairs for questioning. At that time, the only evidence against him was the similarity of his automobile to that described to the police as having been seen near the murder scene. While the plaintiff was in the police headquarters, officers searched his automobile, which was parked outside, and found a number of items in the trunk which were later introduced in evidence at the trial. [The search was not conducted pursuant to a search warrant, nor did the petitioner consent ` to the car being searched.] Shortly after this search, the police learned, from a passenger who had been in the plaintiff's automobile when it was stopped, that, at about 8 p. m. on February 9, he had parted from the plaintiff in the parking lot where the dead woman's body was found. The plaintiff was questioned by the police for about two and a half hours prior to 3:45 a. m. on February 11, and during this time he gave several conflicting accounts of his activities on February 9. [During the course of this interrogation, the petitioner was confronted with the items that had been seized from his car and his apartment. During part of this interrogation, the coroner, Krentzman, was present. The petitioner testified at the evidentiary hearing that the coroner participated in the questioning, while Lt. Walsh, the arresting officer, testified that he did not recall the coroner asking any questions.] The police also went to the plaintiff's apartment and, from there brought his wife to police headquarters for questioning. Although advised that he was being detained on suspicion of first-degree murder, the plaintiff was, at about 3:45 a. m. on February 11, arrested on the charge of 'breach of peace—investigating', a holding charge then in use by the police. Later that same morning, he was presented in the Bridgeport police court on the same charge. Sometime early that morning, his wife was similarly charged and remained in custody about three days. Prior to his arrest, the clothing the plaintiff was wearing was taken from him, and, after being brought to police headquarters, his wife volunteered to, and did, go with police officers to the apartment which she occupied with the plaintiff. She admitted the officers to the apartment, took therefrom a shirt and shoes which she said her husband had worn the night before and gave them to the officers. [The police had no warrant to search the apartment; nor had the petitioner given his wife or the police permission to take his clothing from the apartment]. * * *

"On February 12, the plaintiff was again questioned by the police at the county jail for about an hour. About 11 a. m. on February 13, he talked with one of the officers and told him that he did not need a lawyer. At about 2:45 that afternoon he gave a statement to the police in question and answer form. [In this statement, Walters described in detail his activities of Thursday evening, the night of the murder, and denied any complicity in the crime.] The interrogation lasted about an hour and a half and was transcribed by a stenographer, after which, on February 14, the plaintiff refused to sign it [, claiming that the transcript was not an accurate reflection of the interview]. Before commencing the statement, the plaintiff was told that he could make the statement or not as he wished, and he chose to make it. The only persons present at the time were the plaintiff, a police lieutenant, and a girl stenographer. At the outset the plaintiff stated, in response to questions, that '[n]obody forced me to tell this story', that the police had neither threatened him nor made him any promises, and that he knew he had been arrested because 'a lady had been murdered'. Neither strong language nor threats were used toward him, and he had not been abused in any way. He thanked the police on several occasions for the kind and considerate treatment accorded him.

"During the trial, the state, in the course of cross-examining the plaintiff,

questioned him concerning answers contained in the typed statement of February 13, and the plaintiff denied making some of the answers read to him. Thereupon his attorney suggested that, if the state was reading from the plaintiff's statement, the whole statement should be submitted to the jury as an exhibit. The state then offered the entire statement as an exhibit, and it was received in evidence without objection.

"The items taken from the plaintiff's automobile and the shirt and shoes furnished by his wife were introduced in evidence. The coroner was permitted to testify that he heard the plaintiff say, in substance, at police headquarters, in the early hours of February 11, that he had been at home with his five children on the night of the murder, which was contrary to the plaintiff's testimony at his trial, and also that he heard him identify a green shirt, which was shown to him, as one he had worn. The police had had no search warrant to search the plaintiff's person, his automobile, or his apartment."

### The Involuntariness Claim

■ The petitioner's trial in 1956 was governed by the then existing rules of evidence and exclusionary standards. *See, e. g.,* Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). It follows that the introduction

at the trial of evidence—even if seized without a warrant or incident to an invalid arrest—will not support a writ of habeas corpus. Recognizing this, the petitioner's principal contention is that the introduction into evidence at trial of the exculpatory statement made by him to the police on February 13 violated his fourteenth amendment rights on the ground the statement was involuntarily given. *See, e. g.,* Greenwald v. Wisconsin, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed. 2d 77 (1968).[2]

In determining whether a confession or exculpatory statement was given voluntarily or involuntarily, the court must look to the "totality of the circumstances." *See* Greenwald v. Wisconsin, *supra.* As coercive factors indicating that the statement was involuntarily given, the petitioner claims that (1) his arrest was illegal; (2) at the time that the statement was made, he had been confronted with evidence illegally seized from his car and apartment; (3) at the time the statement was made, he had been deprived of the assistance of counsel and had not been warned of his rights; (4) the statements were made after lengthy interrogation by the police; and (5) the petitioner had only four and one half years of education.

■ *The illegal arrest.* The petitioner contends that his arrest on breach of the peace—investigating charges was illegal. The respondent concedes that the

2. The petitioner makes a similar claim in regard to the testimony at trial of the coroner, relating statements made by Walters to the police during the February 11 interrogation. This claim, while not as strong as the one based on the February 13 transcribed statement of Walters, stands on the same footing.

An additional ground advanced by the petitioner is that the evidence of his February 11 and 13 statements to the police should have been excluded at trial as "fruits" of the illegal arrest and searches, and seizures, under the rationale of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Since Walters' trial took place before the Supreme Court's opinions in *Wong Sun* and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct.

1684, 6 L.Ed.2d 1081 (1961), the question is whether the *Wong Sun* exclusionary rule, first applied to state court prosecutions in Traub v. Connecticut, 374 U.S. 493, 83 S.Ct. 1899, 10 L.Ed. 2d 1048 (1963), should be applied retroactively. The *Wong Sun* doctrine is based on the fourth amendment, and the Supreme Court, thus far, has held that exclusionary rules formulated to enforce fourth amendment commands are not to be applied retroactively. *E. g.,* Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 . L.Ed.2d 601 (1965). These cases leave no doubt that the exclusionary rule set forth in *Wong Sun* is not to be applied retroactively.

breach of the peace charge is a holding charge (a common practice used by the police at that time, but since discontinued), and that there was no probable cause for an arrest on that charge. The Connecticut Supreme Court has suggested strongly that arrests made on this type of holding charge violate both state statutes and the state constitution. *See* State v. Traub, 151 Conn. 246, 248, 196 A.2d 755 (1963).

The United States Supreme Court has enumerated, on several occasions, the factors to be taken into consideration in determining the voluntariness of a statement. *See, e. g.,* Greenwald v. Wisconsin, *supra*; Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). There is, however, no clear statement by the Supreme Court that the *illegality* of an arrest is a factor tending to show coercion and is, hence, a relevant subject of inquiry.[3] While there is no indication that the Supreme Court intended the factors it has pointed out to be treated as the exclusive subjects of inquiry, *see* Culombe v. Connecticut, 367 U.S. 568, 622, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), it is difficult to see how the illegality of the arrest may be considered a coercive factor. Any coercion that results from an illegal *arrest* is a product of the arrest and the detention in police custody which follows and not from its illegality.[4]

*The illegal search and seizure.* The petitioner contends that the items seized from his car and apartment were products of illegal searches. His claim is that confrontation with these allegedly illegally seized objects is a coercive factor which should be considered in determining the voluntariness of the statement made. It may be taken as established that the search of the petitioner's car was conducted in violation of the fourth amendment, as it was conducted neither pursuant to a warrant nor incident to an arrest on probable cause.

The legality of the search of the petitioner's apartment presents a more difficult question. At the request of the police, Mrs. Walters, with several police officers, returned to the apartment shared by her and the petitioner and turned over some clothing to the police. Whether this conduct may be considered a "search"; if so, whether the wife may be considered to have freely and knowingly "consented" to the search; and whether the wife's consent may be considered binding on the petitioner[5] are questions which the court does not have to answer in this case, for like the illegality of the arrest, the illegality of the searches is not a factor to be given any weight in this case in determining the voluntariness of the statement.

At the time of the trial, the evidence was admissible—there were no exclusionary restrictions on its use. It was the use to which the evidence was put and not how it was obtained that was significant. The means of obtaining the evidence was a neutral factor, which had no bearing—one way or the other—on whether the statement made was voluntary.[6]

---

3. While the Supreme Court, in Clewis v. Texas, 386 U.S. 707, 711, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967), noted that the arrest of Clewis was not upon probable cause, it is not clear that this was a factor which the Court considered in viewing the "totality of the circumstances." Rather, the Court was more concerned that Clewis was held for more than 38 hours before being brought before a magistrate.

4. There is more than a nuance of difference between a statement coerced from an accused and one which, though induced by an illegal arrest, is voluntarily

given. *See* footnote 2, *supra;* Developments in the Law—Confessions, 79 Harv. L.Rev. 938, 1024–28 (1966).

5. The Supreme Court recently answered this question in the affirmative, Jenkins v. Delaware, 395 U.S. 213, 214 n. 2, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969), aff'g, Jenkins v. State, 230 A.2d 262 (Del.1968). *Cf.* Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

6. The Supreme Court has never stated or suggested that the illegality of the seizure of evidence with which an accused is confronted is a factor tending to

*The failure to give warnings; the lack of counsel; the length of interrogation; and the educational background of Walters.*

█ The petitioner's trial took place before the Supreme Court's opinions in Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966), so that the exclusionary rules of those cases do not act as an automatic bar to the introduction into evidence of the statement in question. However, as the Supreme Court noted in Johnson v. New Jersey, 384 U.S. 719, 730, 86 S.Ct. 1772, 16 L. Ed.2d 882 (1966), the failure to give warnings and the lack of counsel at the time when the challenged statement was given are factors which may be considered in determining voluntariness. The petitioner's educational background, *see* Greenwald v. Wisconsin, *supra,* and the intensity of the interrogation, the treatment and conduct toward him while in custody, *see* Davis v. North Carolina, *supra,* are factors which are also properly taken into consideration.

## Conclusion

█ Now that the relevant factors have been delineated, the question for the court is whether, under the totality of the circumstances, the statement given by Walters was the product of his own free will or whether it was the product of the breaking down or overbearing of the petitioner's will by the police. *See* Culombe v. Connecticut, *supra,* 367 U.S. at 622, 81 S.Ct. 1860, 6 L. Ed.2d 1037. There is no slide rule method of assessing voluntariness; it is a matter of judgment. Taking all the factors enumerated above into consideration, there is no basis for upsetting the state court's conclusion that the statement made by the petitioner to the police on February 13, 1956, was not invol-

show coercion and, therefore, should be considered in the determination of the voluntariness of statements made by an accused. However, there is language in the case of Hall v. Warden, Md. Peni-

untarily given or coerced. *See* 28 U.S.C. § 2254(d). I would have reached the same conclusion. While it is difficult to plumb the mind of an accused and to reconstruct, after the lapse of more than thirteen years, not only the historical events that took place but also what an individual's subjective response was to a set of circumstances, there are certain undisputed, objective facts which impel me to the conclusion that the statement given was voluntary.

First, it is significant that the statement finally given by Walters to be taken down was not a "confession" or "admission" of any elements of the crime. It purported to be an alibi. While it is recognized that exculpatory, as well as inculpatory, statements may be the product of police coercion, certainly, in seeking to determine whether the will of an accused had been overborne by the police, it is not irrelevant that the end product of the allegedly coercive influences was a denial of guilt—no different from the petitioner's initial statements to the police. This is not a case where the accused first denied guilt and then, after many days of interrogation without counsel, confessed. *Compare* Davis v. North Carolina, *supra.* From the beginning, and throughout the trial, Walters denied complicity in the crime. There was no "confession" here which turned the trial into a sham. His conviction was not secured through his own incriminating statements. Only a portion of the statement was introduced on cross-examination to impeach his direct testimony. The entire statement came in thereafter at the request of his own counsel.

Significant also is the fact that after the statement in question was given and typed up, Walters refused to sign it. This fact, in itself, is inconsistent with the claim that the accused's will was broken down or overborne by the police.

tentiary, 313 F.2d 483, 488–490 (4th Cir. 1963), that would indicate that that court felt confrontation with illegally seized evidence was a factor in considering voluntariness.

Moreover, Walters never claimed that he refused to sign the statement because he had never really wanted to give one. The only reason he advanced for his refusal to sign the statement was that it did not reflect his answers to the police officer's questions with complete accuracy. Since the February 13 statement by the petitioner to the police was voluntarily given, its introduction into evidence at trial did not violate his fourteenth amendment rights.

The petition is dismissed.

So ordered.