Tammy R. GARVIN, Petitioner–
Appellant,

v.

Teena FARMON, Warden,
Respondent–Appellee.

No. 00–15295.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 15, 2000

Filed Aug. 2, 2001

Bruce Eric Cohen, Berkeley, California, for the appellant.

Martin S. Kaye, Deputy Attorney General, San Francisco, California, for the appellee.

Before: KLEINFELD, MICHAEL DALY HAWKINS, and TALLMAN, Circuit Judges.

KLEINFELD, Circuit Judge:

This case involves whether a confession was tainted by an earlier interrogation that violated the suspect's constitutional rights.

### Facts

We take the facts from the state appellate court opinion.[1]

---

1. The state appellate court opinion is unpublished, *People v. Garvin*, No. H014910 (Cal. App. 6th Dist., Mar. 18, 1998).

Garvin worked as a waitress in a restaurant, under the name "Jessica." She had a sexual relationship with the elderly owner of the restaurant, and about a month before the murder, began another relationship with Herman Lemelle. She knew that the owner put sales proceeds in the bank once a week, on Monday or Tuesday, and she knew where he hid the money until then. Garvin and Lemelle arranged to rob the owner. She knocked on the owner's door at about 2:00 A.M. and he opened it. He was then stabbed 50 to 60 times with multiple weapons. Because of Garvin's and Lemelle's statements to their friends, they were both sought by the police.

Garvin turned herself in to the police on Friday March 15, 1991, two weeks after the murder. Two detectives interrogated her. They advised her of her *Miranda* rights, but when she said she wanted to talk to a lawyer, they kept interrogating her despite her repeated requests for counsel. The interrogation lasted about 45 minutes, but she did not admit anything. The interrogation ended when she told the detectives that she had not slept for three days and needed some sleep, but that she would call them.

The importance of the interrogation lies not in what Garvin said, which was essentially nothing, but in what the detectives said. They told her that: (1) she could avoid a capital murder charge by confessing to a robbery (misleading her about the consequences, which would be evidence of felony murder); (2) Lemelle would get a better lawyer than she would, and she had better help herself; (3) nothing she said in the interrogation could be used against her; (4) they had fingerprints and skin from under the restaurant owner's fingernails (this was false); and (5) if she did not cooperate, she would be charged with murder, but Lemelle would be charged only as an accessory.

Garvin spent the weekend in jail and was brought to court Monday afternoon. The complaint charged that Garvin robbed and murdered the restaurant owner, and that Lemelle was an accessory after the fact for harboring and assisting her afterwards. The public defender appeared specially, advising the court of a conflict of interest because she represented Lemelle. The court set a hearing later in the week for substitute counsel to be named, and Garvin went back to jail.

That night Garvin called a friend and had the friend tell one of the detectives she wished to speak with him. He came to the jail, advised her of her *Miranda* rights, and interviewed her. This time she confessed on tape. She said she just got Lemelle in the door, then waited outside in the car while he robbed and stabbed the owner. When it took longer than she expected, she went inside, and the bleeding restaurant owner asked her "Jessica, why? I was so good to you." She took the bag of money and left.

Garvin and Lemelle were subsequently indicted. Unlike the complaint, the indictment charged both of them with burglary, robbery and murder, and alleged that both of them used a knife. They were tried separately. Lemelle was acquitted. Garvin was convicted and sentenced to life imprisonment without parole. Garvin sought unsuccessfully to suppress her confession.

Garvin appealed unsuccessfully, addressing the admission of her taped confession during the second interrogation as well as other issues not before us. The California Court of Appeal held that although the first interrogation violated Garvin's rights in numerous respects, the second interview was nevertheless not tainted by these violations and was properly admitted. Garvin petitioned the United States District Court

for a writ of habeas corpus unsuccessfully,[2] and appeals the denial of her petition.

## Analysis

■■■ This petition was filed after April 24, 1996 and is thus governed by 28 U.S.C. § 2254, as amended by the AEDPA.[3] The AEDPA requires a "new, highly deferential standard for evaluating state court rulings."[4] Where, as here, the state court adjudicated the claim on the merits, we may not grant the writ of habeas corpus unless the state court review "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[5] The AEDPA "restricts the source of clearly established law" to the Supreme Court's "holdings, as opposed to the dicta, ... as of the time of the relevant state court decision."[6] The word "unreasonable" means that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."[7]

We have interpreted the unreasonableness requirement to mean that there must be "clear error," not merely error, in the state court application of Supreme Court holdings, such that we have "a definite and firm conviction" that an error has been committed, as opposed to concluding merely that the petitioner has the better argument as to the law.[8]

■■■ It is undisputed that the police violated Garvin's constitutional rights during the first interrogation. Detective Kern testified that he had learned in his training that if a person said that they did not want to be questioned and wanted to speak to an attorney, the questioning had to stop.[9] Nevertheless, in violation of what he knew to be Garvin's constitutional rights, he chose to continue questioning her after she said that she wanted an attorney, assuring her that what she said could not be used against her. The state appellate court said Kern admitted that "it was his practice to intentionally violate the constitutional rights of suspects when he 'wanted to develop more evidence.'"

■■■ The state appellate court characterized this police misconduct as "egre-

2. See *Garvin v. Farmon,* 80 F.Supp.2d 1082 (N.D.Cal.1999).

3. See *Lindh v. Murphy,* 521 U.S. 320, 336–38, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *cf. Dubria v. Smith,* 197 F.3d 390, 398 n. 5 (9th Cir.1999); *Jeffries v. Wood,* 114 F.3d 1484, 1499 (9th Cir.) (en banc) *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997).

4. *Lindh,* 521 U.S. at 333 n. 7, 117 S.Ct. 2059.

5. 28 U.S.C. § 2254(d)(1). This provision reads in full:

   (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6. *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Van Tran v. Lindsey,* 212 F.3d 1143, 1154 (9th Cir.2000), *cert. denied,* 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000).

7. *Williams,* 529 U.S. at 411, 120 S.Ct. 1495.

8. *Van Tran,* 212 F.3d at 1153–54.

9. See *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

gious." We agree. The Constitution is not a set of rules that the government is free to violate so long as it is willing to do without the evidence so obtained. Where the Constitution prohibits questioning, it does not mean that questioning may continue to acquire information so long as the government does not use that information at trial. It may be that a suspect questioned in plain violation of well established constitutional rights, as here, would be entitled to summary judgment against the police officer in a section 1983 action.[10]

■ But a violation of Garvin's constitutional rights in the Friday interrogation does not necessarily require suppression of the Monday night confession. Garvin did not confess on Friday, and nothing she said Friday was used against her. What was used against her was her confession late Monday night. The question is whether the violation of her constitutional rights Friday required suppression of her Monday night confession.

■ Because the state appellate court adjudicated petitioner's claim on the merits, the question is whether the state appellate court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[11] Analysis of an AEDPA habeas corpus appeal begins with identification of what Supreme Court decisions plaintiff claims the state court decision was contrary to or misapplied. Petitioner claims

that the state court acted contrary to or unreasonably applied the law as determined in four Supreme Court decisions: *Wong Sun v. United States*,[12] *Clewis v. Texas*,[13] *Brown v. Illinois*,[14] and *Oregon v. Elstad.*[15]

*Wong Sun* is of little help one way or the other. It held that statements made by one of the defendants during the course of an unlawful entry into the home by police and unlawful arrest were fruits of the Fourth Amendment violations and therefore inadmissible.[16] The case at bar involves no unlawful entry or unlawful arrest. Regarding another defendant, *Wong Sun* held that his confession was not rendered inadmissible by his unlawful arrest because his release from jail and voluntary return to make his statement attenuated the taint sufficiently.[17] *Wong Sun*'s holding regarding attenuated taint establishes that "but for" causation is not enough to taint a confession. But beyond that, *Wong Sun* is not of much help because *Wong Sun* involves a Fourth Amendment violation but the case at bar does not.

*Clewis v. Texas*, a pre-*Miranda* case, is also of little help one way or the other. The Court held that a confession was inadmissible because it was involuntary where the defendant: (1) was unlawfully arrested; (2) was held abusively for nine days before he confessed; (3) was never warned that he had the right to remain silent or that he had the right to appointed counsel; and (4) had his faculties impaired by inadequate sleep and food.[18] Garvin was not

---

**10.** *See generally Cooper v. Dupnik*, 963 F.2d 1220 (9th Cir.1992) (en banc).

**11.** 28 U.S.C. § 2254(d)(1).

**12.** 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**13.** 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967).

**14.** 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

**15.** 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

**16.** *See Wong Sun*, 371 U.S. at 485, 83 S.Ct. 407.

**17.** *See id.* at 491–92, 83 S.Ct. 407.

**18.** *See Clewis*, 386 U.S. at 709–10, 87 S.Ct. 1338.

unlawfully arrested or abused.

*Brown v. Illinois* addresses the voluntariness of a confession but is likewise of little help here. *Brown* holds that a *Miranda* warning is not necessarily enough to make a confession admissible after an unlawful arrest, but rather the confession must be "sufficiently an act of free will to purge the primary taint." [19] The Court stated that this question is to be answered "on the facts of each case," considering such factors as whether a *Miranda* warning was given, temporal proximity of the unlawful arrest and the confession, and the purpose and flagrancy of the misconduct.[20] The *Brown* analysis, however, cannot be applied to the case at bar, because the Court in *Brown* emphasized that it applied the exclusionary rule "to effectuate the Fourth Amendment" which "serves interest and policies that are distinct from those it serves under the Fifth," so "even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains." [21] The "causal chain between the illegal arrest and the statements made" had to be broken for the statements to be admissible despite the Fourth Amendment violation, regardless of whether the statements satisfied the Fifth Amendment.[22] In the case at bar there was no Fourth Amendment violation, so *Brown*'s additional requirements based on the Fourth Amendment violation do not apply.

Petitioner argues largely from *Oregon v. Elstad*, but the state court decision was not contrary to or an unreasonable application of *Elstad*. In *Elstad*, the police obtained an admission prior to giving a *Miranda* warning, and a full confession after giving the warning. The lower court held that the full confession was "tainted" as "fruit of the poisonous tree" because the first admission had a continuing coercive effect when a suspect had "let the cat out of the bag." [23] The Supreme Court reversed. *Elstad* holds that administration of a *Miranda* warning ordinarily cures the condition that rendered the earlier admission inadmissible, and the admissibility of a subsequent admission following a *Miranda* warning turned "solely on whether it is knowingly and voluntarily made." [24] *Elstad* emphasizes that metaphors "should not be used to obscure fundamental differences between the role of the Fourth Amendment exclusionary rule and the function of *Miranda* in guarding against the prosecutorial use of compelled statements as prohibited by the Fifth Amendment." [25] The Court went on to state that even if the first confession is obtained by "unconscionable methods of interrogation, the Court has assumed that the coercive effect of the confession could, with time, be dissipated." [26]

The state court in the case at bar did not disregard or misapply *Elstad*'s holding. The issues raised in *Elstad* do not even arise here. In *Elstad*, the first interrogation was not preceded by a *Miranda* warning, and the suspect made a critical admission; [27] in the case at bar there was a *Miranda* warning (the Fifth Amendment violation was failure to stop the question-

---

**19.** *Brown*, 422 U.S. at 602, 95 S.Ct. 2254.

**20.** *Id.* at 603–04, 95 S.Ct. 2254.

**21.** *Id.* at 601–02, 95 S.Ct. 2254.

**22.** *Id.* at 602, 95 S.Ct. 2254.

**23.** *See Elstad*, 470 U.S. at 303, 105 S.Ct. 1285.

**24.** *Id.* at 309, 105 S.Ct. 1285.

**25.** *Id.* at 304, 105 S.Ct. 1285.

**26.** *Id.* at 311–12, 105 S.Ct. 1285.

**27.** *See id.* at 301, 105 S.Ct. 1285.

ing until the suspect's demand for counsel was satisfied), and the suspect admitted nothing.

There remains the question whether police conduct in the first interrogation made the admissions in the second interrogation involuntary. The Court's emphasis in *Elstad* on the curative effect of a *Miranda* warning does not mean that if police give a *Miranda* warning, and then coerce the suspect to confess, that the involuntary confession is admissible against the suspect.[28] The gist of the petitioner's argument is that the police misconduct during her first interrogation, after it should have ended because of her demand for counsel, made her admissions during the second interrogation involuntary. Petitioner argues that the misconduct in the earlier interrogation deceived her into thinking she could avoid a murder prosecution by admitting to robbery, when actually the felony murder doctrine would make her admission to robbery tantamount to a confession of murder.

We assume for purposes of discussion, but do not decide, that such police deception may be unconstitutional.[29] The state court followed state law treating misleading police legal advice as violative of the suspect's rights. Despite this assumption, the state court held that Garvin's admissions during the second interrogation were voluntary.

In its careful analysis, the state court evaluated voluntariness by considering age, sophistication, prior experience with the criminal justice system, emotional state, duration and significance of a break in the stream of events between prior coercion and subsequent admissions, and other factors. It noted that Garvin was sophisticated and wary; she had a 29–page rap sheet, but had been committed to prison only once. She refused to admit anything during the first interrogation, even though the police violated her right to have it stop until her request for counsel was satisfied. Her second statement, when she made the admissions, came three days later, after she had been to court and spoken with other inmates and on the phone with her friend. She said on tape that the reason she was speaking was that "I'm trying to do what's right." Asked why she decided to make the admissions, she said "because this shit was eating at me. I cannot sleep. Do you hear me? I can't even sleep at night. I sleep in the day time. It is fucking killing me." When Kern asked her what she was hoping for at the end of the second interview, she said "I need that murder off of me."

Though perhaps these statements could be interpreted otherwise, the state court's interpretation, that Garvin spoke because of a guilty conscience, as well as hope for the lenience she had so much experience in obtaining, is well supported by the record. The state court concluded that "the initial coercion had such a minimal effect on the will of the appellant, the second *Miranda* advisement neutralized any lingering effect of the earlier misconduct." Thus the state

---

**28.** *See id.* at 308–09, 105 S.Ct. 1285.

**29.** The Supreme Court stated in *Colorado v. Spring*, 479 U.S. 564, 576 n. 8, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) that "[i]n certain circumstances, the Court has found affirmative misrepresentations by the police sufficient to invalidate a suspect's waiver of the Fifth Amendment privilege," but that "we are not confronted with an affirmative misrepresentation ... and do not reach the question whether a waiver of *Miranda* rights would be valid in such a circumstance." Our decisions in *United States v. Orso*, 234 F.3d 436 (9th Cir. 2000), *reh'g en banc granted*, 248 F.3d 1201 (2000), *Pope v. Zenon*, 69 F.3d 1018 (9th Cir. 1995), and *United States v. Wauneka*, 842 F.2d 1083 (9th Cir.1988), addressed this issue and would require discussion, but for the statutory requirement that a petition can be granted only if the state court violated "Supreme Court" holdings. 28 U.S.C. § 2254(d)(1).

court concluded that "the totality of the circumstances show that appellant was not influenced in any way, shape, or form by the earlier violation of rights." The state court considered that Garvin disclosed nothing during the coercive interview, and then, three days later, after separation from it and the opportunity to consider her situation and speak with others, she made the critical admissions, partly in hope of lenience (she denied using the knife) and partly because of a guilty conscience. The state court also noted that in listening to Garvin's voice on the tape of the second interview, it was "firm and decided" and her voice "provides no evidence of reluctance or unwillingness to speak."

■ There is no plenary federal review of state criminal convictions. Habeas corpus review is subject to limitations, strengthened by the AEDPA, requiring deference to state court determinations on the merits. The decision by the Court of Appeal of the State of California, Sixth Appellate District, is a careful and thorough discussion of the facts bearing on voluntariness, and it concludes that Garvin's admissions during her second interrogation were voluntary. Because the state court adjudicated the claim on the merits, the petitioner must demonstrate, in order to obtain relief, that it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." She has failed to do so.

AFFIRMED.