UNITED STATES of America,
Plaintiff–Appellee,

v.

Matthew Arnold PATZER,
Defendant–Appellant.

No. 00–30360.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2001

Filed Jan. 14, 2002

Samuel Richard Rubin and Fredilyn Sison, Federal Defenders of Eastern Washington and Idaho, Boise, Idaho, for the defendant-appellant.

Michael J. Fica, Assistant United States Attorney, United States Attorney's Office, Pocatello, Idaho, for the plaintiff-appellee.

Before: REAVLEY,* B. FLETCHER and TALLMAN, Circuit Judges.

REAVLEY, Circuit Judge:

Matthew Patzer was convicted of five counts of being an unlawful user of a controlled substance in possession of a firearm (18 U.S.C. § 922(g)); three counts of unlawful manufacture of a firearm (26 U.S.C. § 5861(f)); three counts of possession of an unregistered firearm (26 U.S.C. § 5861(d)); and one count of possession of a firearm not identified by a serial number (26 U.S.C. § 5861(i)). He appeals the district court's denial of his Motion to Suppress. We agree that Patzer's arrest was not lawful, and that the unlawful arrest tainted the statements and other evidence obtained subsequent to his arrest. We REVERSE and REMAND.

I. *Background*

During the early morning of September 26, 1998, Matthew Patzer was driving a Chevrolet Blazer in the city of New Plymouth, Idaho, with a passenger in the front seat. New Plymouth Police Officer Tom Patterson pulled over the Blazer when he noticed that one of the taillights was out. When the officer approached the vehicle he saw two .22–caliber rifles in the backseat of the car, although, he later testified, he was not much concerned about the weapons because "in Idaho everyone has a gun."

Officer Patterson was concerned, however, when he noticed that both Patzer and his passenger appeared to have bloodshot and glassy eyes, and he suspected the two had been smoking marijuana. When queried, they responded that they had been at a party where people had been smoking marijuana, but that they had not smoked any. Officer Patterson asked Patzer to step out of the car so he could administer some sobriety tests. Patzer complied and passed two tests designed to detect alcohol consumption, but showed eyelid tremors that suggested marijuana use when Officer Patterson administered the "Romberg test." Officer Patterson then asked Patzer to "be straight with" him, and tell him whether he had been smoking marijuana. Patzer then admitted that he had.

Officer Patterson placed Patzer under arrest for driving under the influence, and put him in the squad car without reading him his *Miranda* rights. After trying without success to get in touch with Patzer's parents to come pick up the Blazer, Officer Patterson called dispatch to have them send a tow truck to take the car to an impound lot. At about this same time, he asked Patzer for consent to search the Blazer. Patzer hesitated in his response, and Patterson told him that he needed a "yes, no or maybe," to which Patzer replied "maybe." The officer then asked Patzer for a simple yes or no, at which point, according to Officer Patterson, Patzer gave his consent for the search.[1]

---

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation.

1. Although the transcript of the audio record-

As the officer moved toward the Blazer (where Patzer's passenger was sitting), he asked Patzer whether there was any marijuana in the vehicle, to which Patzer replied no. Officer Patterson then continued, "[y]ou don't have anything in there that is illegal that you are trying to hide or anything? Now be straight up with me Mr. Patzer. I wasn't born yesterday." Patzer then admitted that there were illegal weapons in the Blazer. When Officer Patterson asked for details, Patzer elaborated that there was a sawed off shotgun, a modified .22, and some knives. After calling the Chief of Police to discuss the situation, Officer Patterson decided to ask Patzer's passenger out of the vehicle before attempting to confiscate the weapons. The officer also asked Patzer about the passenger's access to the weapons. Patzer responded that the guns were out of reach, but told the officer that the Blazer also contained "loaded grenades." After Chief Elfering arrived on the scene and additional questioning had taken place, the officers conducted a search of the vehicle and discovered a number of weapons, including grenades.

Before trial, Patzer filed a motion to suppress all of the physical evidence and statements obtained during the course of the traffic stop and his arrest. The district court denied the motion. Patzer was convicted of all charges against him.

## II. Discussion

■ Motions to suppress are reviewed de novo.[2] The district court's underlying factual findings are reviewed for clear error.[3] In the present case the district court erred as a matter of law in denying the motion to suppress, because the arrest was unlawful and tainted the subsequently obtained verbal and physical evidence.

### A. Search Incident to Arrest

The government argues, and the district court agreed, that the search of the Blazer was a search incident to Patzer's lawful arrest for driving under the influence, and so valid under *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768.[4] *However, a close reading of Idaho's DUI statute reveals that Officer Patterson did not have probable cause to arrest Patzer for driving under the influence of marijuana.*

■ The applicable subsection of Idaho's statute provides:

It is unlawful for any person who is an habitual user of, or under the influence of any narcotic drug, or who is under the influence of any other drug or any combination of alcohol and any drug to a degree which impairs the driver's ability to safely operate a motor vehicle, to drive or be in actual physical control of a motor vehicle within this state....[5]

Under the reading of the statute urged by Patzer, an officer may not arrest a person for driving after using a non-narcotic drug

ing that Officer Patterson made during this exchange does not reflect that Officer Patterson asked a follow-up to the "yes, no, maybe" question, the district court found that the audio recording device may have been inadvertently switched off during part of the conversation, and credited Officer Patterson's testimony that he did obtain consent by next asking that Patzer answer "yes" or "no." For the reasons discussed below, the Court need not determine whether that finding was clearly erroneous.

**2.** *United States v. Murillo*, 255 F.3d 1169, 1174 (9th Cir.2001).

**3.** *Id.*

**4.** 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (holding that an officer may search a suspect's vehicle incident to a lawful arrest).

**5.** Idaho Code § 18–8004(5).

without probable cause to believe the person's ability to drive safely is impaired. We agree with this reading. Not only must the government show that Officer Patterson had probable cause to believe that Patzer was "under the influence," but such influence must have been "to a degree which impairs the driver's ability to safely operate a motor vehicle," if each clause of the sentence is to have meaning.[6]

█ The government's response to this argument is that marijuana is a narcotic, and so a showing of impairment is not required. However, Idaho statutory law consistently defines marijuana as outside the category of narcotic drugs.[7]

█ Officer Patterson did not have probable cause to believe that Patzer's ability to drive was impaired. Patzer's attorney questioned Officer Patterson on this point at length during the suppression hearing, and Officer Patterson's responses and descriptions of Patzer's behavior reveal that Patzer's driving and comportment did not evidence any impairment. Given the distinction drawn by the statute, there is no basis to conclude that impairment may be presumed upon admission of use of a non-narcotic drug. Therefore, the arrest was unlawful and the *Belton* exception unavailing.

## B. *Consent*

The government next argues that Patzer consented to Officer Patterson's request to search the car, and that the eventual search was legitimate because of that consent. Although Patzer's response to the consent exception focuses largely on the issue of whether his consent was voluntary (a Fifth Amendment argument), he sufficiently contests the validity of the search as a product of his unlawful arrest that we also consider whether the unlawful arrest "tainted" his consent (a Fourth Amendment argument).

█ When an individual gives consent to search after an arrest made without probable cause, that consent to search, like a confession, may be tainted by the illegal arrest and so invalid and suppressible.[8] Consent may be tainted even though it is "voluntary" within the meaning of the Fifth Amendment.[9] The relevant factors in determining whether a consent to search is tainted are: "(1) whether *Miranda* warnings were administered prior to the consent; (2) the temporal proximity of the arrest to the [consent]; (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct."[10] The government bears the bur-

---

6. *See State v. Lesley*, 133 Idaho 23, 981 P.2d 748, 751 (1999). In *Lesley*, the court of appeals held that under the previous version of the statute (similar to the present version in material respects), a violation turned on the effect the drug had on driving, and not on the amount of drugs ingested by the defendant. *Id.*

7. Idaho Code § 37–2701(s), (t)(defining marijuana as distinct from "narcotic" drugs, which include opium and coca based drugs); *see also* Idaho Code § 18–6706 (authorizing wiretaps in investigations of "dealing in narcotic drugs, marijuana or other dangerous drugs"); Idaho Code § 18–3302(1)(e) (listing use of marijuana, depressants, stimulants, or narcotic drugs as a basis for denying gun

licenses); Idaho Code § 37–2739(b) (listing second or subsequent offenses for sentencing purposes as including convictions under state law relating to narcotic drugs, marijuana, depressant, stimulant, or hallucinogenic drugs).

8. *United States v. Taheri*, 648 F.2d 598, 601 (9th Cir.1981).

9. *See Anderson v. Calderon*, 232 F.3d 1053, 1072 (9th Cir.2000) (explaining in context of confessions that "voluntariness" is an independent consideration).

10. *United States v. Delgadillo–Velasquez*, 856 F.2d 1292, 1299 (9th Cir.1988) (citing *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)).

den of showing admissibility.[11]

■ Although Officer Patterson did not engage in any flagrant misconduct to obtain the consent, the other three factors point strongly in the direction of finding that Patzer's consent was a direct product of his unlawful custodial arrest. The request for consent followed shortly after Patzer's arrest and while he was still sitting in the squad car at the scene. He had not yet been read his *Miranda* rights. The intervening circumstances included Officer Patterson's unsuccessful attempt to reach Patzer's parents to come collect the vehicle and his subsequent decision to have the vehicle towed into police custody. Those intervening circumstances would not tend to dissipate the coercive environment of an unlawful custodial arrest. Because the consent was tainted by the unlawful arrest, we need not resolve whether it was nonetheless voluntary within the meaning of the Fifth Amendment.

## C. *Public Safety Exception*

■ The government argues that Patzer's admission that he had illegal weapons in the car should not be suppressed because he made those statements in response to valid questions posed by Officer Patterson under the "public safety exception." Generally, statements obtained in response to custodial interrogation of a suspect who has not been read his or her *Miranda* rights are subject to the exclusionary rule.[12] However, in *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550,[13] the Supreme Court recognized an exception where "police officers ask questions reasonably prompted by a concern for the public safety."[14]

■ The public safety exception can excuse the omission of warnings designed to protect Fifth Amendment rights. The government does not argue, and we have found no authority, that the emergence of exigent circumstances automatically attenuates the taint between an earlier Fourth Amendment illegality, like an unlawful arrest, and the statements and evidence the officer obtains in the course of reacting to the exigency. Just as reading *Miranda* warnings to a suspect after an unlawful arrest does not automatically act as a "cure-all" and remove the Fourth Amendment taint from subsequently obtained statements,[15] neither does the existence of an exception to the *Miranda* rule.

■ Instead, "[a] confession obtained during an unreasonable detention is subject to suppression unless it 'was sufficiently an act of free will to purge the primary taint of the unlawful invasion.' "[16] For the same reasons discussed above in connection with the consent exception, there was no meaningful break in the chain of events between the unlawful arrest and Patzer's custodial interrogation that would allow admission of either his statements about the weapons in the vehicle, or evidence obtained during a search based on those statements. That questions posed under exigent circumstances might not be *separate* Fifth Amendment violations does not mean that there is a break in the chain of events from the original Fourth Amendment violation.[17]

11. *Id.* at 1300.

12. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

13. 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984).

14. *Id.* at 656, 104 S.Ct. 2626.

15. *Brown v. Illinois*, 422 U.S. 590, 602–03, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

16. *Anderson*, 232 F.3d at 1072 (emphasis removed) (quoting *Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

17. We need not reach the question of whether Officer Patterson's question about the pres-

## D. Post–Miranda Questioning

 Finally, the government argues that statements Patzer made in response to questions asked after he was read his *Miranda* rights[18] should be admissible, and supported the search of the vehicle. Again, the government's argument on this point begins from the premise that the arrest was lawful. The reading of *Miranda* warnings is not sufficient in itself to prevent the subsequent statements from constituting "fruits" of the illegal arrest.[19] It is the government's burden to show that evidence is not "fruit of the poisonous tree."[20] In the present case, the government has not even responded to Patzer's argument that if his initial arrest was unlawful, all of the statements[21] and evidence obtained thereafter were sufficiently linked to the unlawful arrest that they must be excluded as an exploitation of that arrest.

## III. Conclusion

Patzer's arrest was unlawful. The evidence obtained after his arrest, including his own statements, his passenger's statements, and the physical evidence found during the search of his vehicle, were "fruit of the poisonous tree" and should

have been suppressed by the district court. The judgment of conviction is RE-VERSED and the cause is REMANDED.

---

ence of "anything illegal" in the vehicle was so broad as to fall outside the limited public safety exception. *See United States v. Brady*, 819 F.2d 884, 888 (9th Cir.1987) (stating that questions qualifying under the exception must be "aimed at controlling an immediate threat to public safety," and *not* investigatory and asked to elicit testimonial evidence).

18. We also need not resolve whether Chief Elfering's recitation of *Miranda* rights, which failed to expressly warn Patzer of the right to remain silent, was so defective as to render Patzer's responses to the questioning subject to exclusion on that basis alone.

19. *Brown*, 422 U.S. at 601–03, 95 S.Ct. 2254; *Garvin v. Farmon*, 258 F.3d 951, 956 (9th Cir.2001) (explaining that a break in the causal chain *is required* after a Fourth Amendment violation, even though statements might

not have been obtained in violation of the Fifth Amendment).

20. *United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir.2000).

21. The government has not argued that any statements obtained from Patzer's passenger should be any less subject to exclusion than physical evidence obtained as a result of the unlawful arrest. *See United States v. Ramirez–Sandoval*, 872 F.2d 1392, 1395 (9th Cir. 1989) ("Verbal evidence, including live-witness testimony, may be no less the 'fruit' of official illegality than is tangible, documentary evidence." (citing *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978))).